(214 P.3d 1190)
No. 100,120

State of Kansas, *Appellee,* v. Willie Dean, *Appellant.*

Opinion filed August 28, 2009.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon* and *Kristi L. Barton*, assistant district attorneys, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before MCANANY, P.J., ELLIOTT and CAPLINGER, JJ.

CAPLINGER, J.: Willie L. Dean appeals his conviction of possession of cocaine, arguing the district court erred in denying his motion to suppress evidence found during a pat-down search of his person that was conducted during the consensual search of his home. Because the officer who conducted the pat-down lacked reasonable suspicion that Dean was involved in criminal activity and further lacked reason to believe that Dean was armed and dangerous, Dean's seizure and subsequent pat-down violated his constitutional right to be free from unreasonable searches and seizures. We thus reverse the district court's denial of Dean's motion

to suppress and remand to the district court for further proceedings.

*Factual and procedural background*

Wichita police officer David Goodman and his partner received a request from detectives to investigate a report of a person possibly selling crack cocaine out of a car parked in front of a residence at 1301 N. Piatt. Goodman was familiar with the address and knew that Dean and others lived at the residence.

When officers arrived at 1301 N. Piatt, no vehicles were parked in front. Nevertheless, the officers decided to conduct a "knock and talk." Ella Dean, a resident of the home, answered the officers' knock at the front door and allowed the officers to enter the home, where Goodman explained he had received a report of possible drug activity in or around the home. Goodman sought and obtained Ella's consent to look around the home for drugs or other contraband.

Dean and another man were standing in the kitchen of the small one-bedroom home. Goodman saw no evidence of illegal activity but asked Dean, who appeared nervous, if he had any weapons on him. Although Dean responded negatively, Goodman then informed Dean that he was going to pat him down.

During the pat-down, Goodman felt a hard, circular object in Dean's right front shirt pocket, which Goodman believed was a crack pipe. Goodman requested Dean to show him the object, and Dean complied, reaching into his pocket and giving the pipe to Goodman. Goodman then arrested Dean and continued his search of Dean's person, where he found another crack pipe, some Brillo pads, and six to eight rocks of crack cocaine.

Based on the evidence found after Dean's arrest, Dean was charged with possession of crack cocaine in violation of K.S.A. 2006 Supp. 65-4160(a). Dean moved to suppress the evidence found on his person, arguing he was unlawfully seized when Goodman patted him down without reasonable suspicion. Thus, Dean argued that the items found during the search of Dean's person after his arrest were tainted by the initial unlawful seizure.

The district court denied Dean's motion to suppress, finding the pat-down was justified for "officer safety."

Dean waived his right to a jury trial, and the parties stipulated to the facts as presented through Goodman's testimony at the suppression hearing and in his affidavit of probable cause. Dean renewed his challenge to the admission of the evidence found on his person following arrest, which the district court again denied before finding Dean guilty as charged.

*Did the District Court Err in Denying Dean's Motion to Suppress Evidence?*

Dean claims the district court erred in failing to suppress the cocaine found on his person during the search following his arrest because at the time Officer Goodman performed the pat-down and Dean was effectively "seized," Goodman lacked reasonable suspicion to believe that Dean was involved in unlawful activity. Alternatively, Dean contends that even if Officer Goodman had reasonable suspicion that Dean was involved in criminal activity sufficient to detain Dean, he lacked reasonable suspicion that Dean was armed and dangerous, and the pat-down was unlawful.

The State contends that when the "totality of the circumstances" are examined, Dean was lawfully detained based upon a reasonable suspicion that he was engaged in unlawful drug activity, and the pat-down was justified based upon reasonable concerns of officer safety.

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights guarantee our right to be free from unreasonable governmental searches and seizures. *State v. Thompson,* 284 Kan. 763, 772, 166 P.3d 1015 (2007). The reasonableness of a search or seizure requires a balancing of an individual's right to be free from arbitrary interference by law enforcement officers with the government's need to further legitimate governmental interests. *Samson v. California,* 547 U.S. 843, 848, 165 L. Ed. 2d 250, 126 S. Ct. 2193 (2006); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975); *Thompson,* 284 Kan. at 772.

When a defendant moves to suppress evidence on the grounds that it was obtained in violation of the defendant's constitutional rights, the State bears the burden to establish the lawfulness of the search or seizure. *State v. Ibarra*, 282 Kan. 530, 533, 147 P.3d 842 (2006).

Generally, we review the denial of a suppression motion to determine whether the district court's factual findings are supported by substantial competent evidence, while we review the ultimate legal conclusion drawn from those factual findings de novo. *Thompson*, 284 Kan. at 772. However, as here, when the case is submitted to the district court on stipulated facts, we need only determine whether suppression is required under those facts, which is a question of law subject to unlimited review. *State v. Jones*, 279 Kan. 71, 74, 106 P.3d 1 (2005); *State v. Burton*, 37 Kan. App. 2d 916, 918, 159 P.3d 209 (2007).

A. A *Terry* "Stop and Frisk" Is Constitutionally Permissible If Both the Stop and the Frisk Are Supported by Reasonable Suspicion.

Both parties cite *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), and K.S.A. 22-2402 to support their diametrically opposed positions. *Terry* provides that if a law enforcement officer reasonably suspects that a person has, is, or is about to commit a crime, the officer may briefly detain, *i.e.*, stop, the person to confirm or dispel the officer's suspicion. During the stop, if the officer reasonably suspects the person detained is armed and dangerous, the officer may perform a pat-down search, *i.e.*, frisk, of the person's outer clothing for weapons. *Terry*, 392 U.S. at 30-31; see K.S.A. 22-2402; *Arizona v. Johnson*, 555 U.S. 323, 327, 172 L. Ed. 2d 694, 129 S. Ct. 781 (2009).

Thus, an officer must be able to point to specific, articulable facts to support reasonable suspicion for *both* the stop and the frisk. See *Johnson*, 555 U.S. at 331-32. Here, the district court failed to apply this dual requirement when it found Dean's pat-down was justified by officer safety concerns but did not determine whether Dean's initial detention was justified by reasonable suspicion that Dean was engaged in criminal activity.

It appears the district court may have mistakenly applied the line of cases giving law enforcement officers authority to detain occupants of a home during the execution of a search warrant authorizing a search of the home, without any particularized suspicion of criminal activity by the individuals detained. See, *e.g.*, *Muehler v. Mena*, 544 U.S. 93, 98, 161 L. Ed. 2d 299, 125 S. Ct. 1465 (2005); *Michigan v. Summers*, 452 U.S. 692, 705, 69 L. Ed. 2d 340, 101 S. Ct. 2587 (1981) (holding "that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to *detain* the occupants of the premises while a proper search is conducted"); see also *Ybarra v. Illinois*, 444 U.S. 85, 93-94, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979) (*search or frisk* of occupants of residence during execution of search warrant is unlawful unless based upon a particularized, reasonable suspicion that the individual subjected to the pat-down search is armed and dangerous).

Presumably because the officers in this case had no warrant to search, the State does not suggest that Dean could be lawfully detained based on his presence during the consensual search of the home. Nor are we aware of any authority extending the line of cases discussed above to a consensual search of a home. See *Summers*, 452 U.S. at 703-05 (noting significance of officers' execution of search warrant based on judicial determination of probable cause).

### 1. Officer Goodman lacked reasonable suspicion to seize Dean.

As stated, the district court did not specifically determine whether Dean's seizure was justified based upon reasonable suspicion that Dean was involved in criminal activity. However, on appeal, the State contends three facts stipulated to by the defendant supported reasonable suspicion: "the report of drug dealing, [Officer Goodman's] experience with defendant and defendant's nervous behavior."

As the State points out, reasonable suspicion is based upon the totality of the circumstances and represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence. *State v. Moore*,

283 Kan. 344, 354, 154 P.3d 1 (2007). Reasonable suspicion does not require that an officer *know* that the defendant committed a crime. Rather, merely pointing to facts that would cause a reasonable person to be suspicious is sufficient to justify a *Terry* stop. *State v. Golston*, 41 Kan. App. 2d 444, 449, 203 P.3d 10 (2009); *State v. Finley*, 17 Kan. App. 2d 246, 251, 838 P.2d 904, *rev. denied* 251 Kan. 940 (1992).

Although courts have noted the importance of giving deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, see, *e.g.*, *Moore*, 283 Kan. at 354, the facts given by the officer must "be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate"? *Terry*, 392 U.S. at 21-22; see also *State v. Cook*, 38 Kan. App. 2d 20, 25-29, 161 P.3d 779, *rev. denied* 285 Kan. 1175 (2007) (Greene, J., dissenting) (discussing the need for vigilance in maintaining an objective standard).

Whether reasonable suspicion exists in a particular case is a question of law. *Moore*, 283 Kan. at 350 (citing *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 116 S. Ct. 1657 [1996]).

The State first points to the "report of drug dealing" at 1301 N. Piatt as evidence of the existence of reasonable suspicion of Dean's criminal activity. While Officer Goodman initially testified that detectives reported possible drug activity *at* 1301 N. Piatt, he admitted on cross-examination that the detectives reported only that an unidentified person may have been selling crack from an unidentified vehicle parked *in front of* 1301 N. Piatt. Further, Goodman conceded that when officers arrived at the residence, no vehicles were parked in front.

It goes without saying that a "report of drug dealing" by an unidentified person in an unidentified vehicle located on a street in front a house does not provide reasonable suspicion that individuals inside the home are "drug dealing," particularly when no vehicle is present when officers arrive. Nevertheless, the State attempts to give this nondescript fact more weight by implying a connection

between "drug dealing" and Officer Goodman's "prior experience with the defendant."

Significantly, the State does not directly quote Officer Goodman's testimony regarding his "prior experience" with Dean. In fact, our review of the transcript reveals that when questioned about his knowledge of the residence, Goodman merely acknowledged his familiarity with the residence and its residents, whom he identified as "Willie Dean, among others."

Goodman also responded "Yes," when asked whether "had occasion to come in contact" with Dean prior to the hearing. And when asked how long he had known Dean, Goodman responded "pretty much my entire career." Finally, on cross-examination, Goodman agreed that he was "just acquainted" with Dean.

To summarize, while Goodman testified he had known or been acquainted with Dean for many years and was familiar with his residence, Goodman provided no details about the source or nature of his knowledge.

Therefore, we are left to consider whether reasonable suspicion of Dean's involvement in criminal activity can be based upon the final factor cited by the State, *i.e.*, that Dean "was acting nervously [and] moved around a little bit." The State cites no authority, and we are aware of none, which would support a finding of individualized suspicion based upon nervousness alone. See *State v. DeMarco*, 263 Kan. 727, 735-38, 952 P.2d 1276 (1998) (discussing limited value of nervousness factor).

Finally, we must determine whether the facts, when considered in their totality, established reasonable suspicion of Dean's involvement in criminal activity. Applying an objective standard, the facts available to Officer Goodman at the moment of the seizure established: (1) Goodman had received a report of an unidentified individual selling crack from an unidentified vehicle in front of a residence where Dean and others lived; (2) no vehicles were parked in front of the residence when Goodman arrived to investigate; (3) Goodman was only generally familiar with the residence and its occupants, including the defendant; (4) during a consensual search of the home, Goodman observed no illegal activity; and (5) when Goodman saw Dean in the kitchen, he thought Dean ap-

peared nervous. Simply stated, these facts do not establish objectively reasonable suspicion that Dean was engaged in illegal drug activity.

Accordingly, Dean was unlawfully seized when Goodman performed the pat-down search because, at that time, Goodman lacked reasonable suspicion to believe that Dean was involved in illegal activity.

## 2. Officer Goodman lacked reasonable suspicion that Dean was armed and dangerous.

Dean alternatively argues that even if the facts supported a finding that at the moment of seizure, Officer Goodman had reasonable suspicion that Dean was involved in criminal activity, the pat-down search was unlawful because Goodman lacked reasonable suspicion to believe that Dean was armed and dangerous.

Because we have found Goodman lacked reasonable suspicion to believe that Dean was involved in illegal drug activity, Dean's detention was unreasonable, and the subsequent pat-down was unlawful

Nevertheless, even if Dean's detention was supported by reasonable suspicion, the pat-down was unlawful as it was not based upon a reasonable suspicion that Dean was armed and dangerous.

In determining whether a *Terry* frisk was based on reasonable suspicion that the defendant was armed and dangerous, the State need not establish that the officer was absolutely certain that the individual was armed. Rather, the issue is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27; see also *Sibron v. New York*, 392 U.S. 40, 64, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968) (the officer "must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous"); K.S.A. 22-2402(2) (during a *Terry* stop, officer may frisk the person for weapons if the officer "reasonably suspects that such officer's personal safety requires it").

To support the assertion that Goodman's pat-down of Dean was justified based on officer safety, the State points to several facts: Goodman's knowledge of the detectives' report of possible drug

activity outside the home; Goodman's general knowledge that guns and drugs are commonly found together; Goodman's familiarity with Dean; Dean's nervous behavior, and Goodman's desire to safely search the house.

As discussed, the report of possible drug activity in front of the house was not connected to Dean or anyone inside the house. And Goodman's testimony that he was generally familiar with 1301 N. Piatt and with Dean does not suggest that guns or weapons were present at the address or that or that Dean was known to carry a gun or weapons. See *Burton*, 37 Kan. App. 2d at 919-21 (finding officer's general testimony that he had prior experience with the suspect insufficient to support reasonable suspicion for a *Terry* frisk).

Goodman's testimony that Dean "was kinda acting nervously, [and] moving around a little bit" also was insufficient to create a reasonable inference that Dean was reaching for a weapon. See *DeMarco*, 263 Kan. at 735-37 (noting that nervousness alone is not sufficient to establish reasonable suspicion, but may be sufficient when combined with other factors).

The State again attempts to rely upon Goodman's knowledge of the link between drugs and guns, suggesting that because Dean was suspected of drug activity, he could also reasonably be expected to carry a weapon. However, in making this connection, the State takes great liberty with the record, arguing: "Officer Goodman knew defendant, based on previous contact throughout the eighteen years of his law enforcement career, and knew it is common for guns to be around drugs." The obvious flaw in this argument is its implication that Officer Goodman's previous contact with Dean involved unlawful drug activity. Yet, as discussed, the record does not support this implication. And without any individualized or particularized facts linking Dean to unlawful drug activity, Goodman's link between drugs and guns is meaningless.

The remaining factor relied upon by the State—Goodman's desire to safely search the house—contradicts rather than supports the State's argument here. Goodman testified that before searching the home, he wanted to "make sure that the people that [he was] dealing with [were] safe to be around." According to Goodman's

affidavit of probable cause, which was stipulated to for purposes of trial, Goodman patted down all of the occupants of the home. Goodman's action in searching everyone present at the residence strongly undermines the State's suggestion that Goodman possessed particularized and individualized reasonable suspicion that Dean was armed and dangerous.

In summary, the objectively reasonable facts available at the time of the pat-down showed (1) officers had received a report of possible drug activity by an unidentified person in an unidentified vehicle in front of the home occupied by Dean and others; (2) no vehicle was present when officers arrived at the residence to conduct a "knock and talk"; (3) Officer Goodman generally was familiar with Dean's residence and Dean; (4) Dean appeared nervous to Officer Goodman and made some nonspecific movement; (5) Goodman generally was familiar with the link between guns and drugs; and (6) Goodman wanted to safely conduct a consensual search of the home so he patted down all of the individuals present in the home, including Dean.

We conclude that when considered in their totality, these circumstances fail to demonstrate that Goodman had an objectively reasonable individualized and particularized suspicion that Dean was armed and dangerous. Thus, the district court erred in finding Officer Goodman's pat-down of Dean was lawful based upon officer safety.

## B. The Unlawfully Seized Evidence Must Be Suppressed.

Finally, Dean argues that because the cocaine found on his person was obtained pursuant to an unlawful detention and search, it should have been suppressed as fruit of the poisonous tree. The State does not respond to this argument or suggest that the evidence is somehow admissible even if procured in violation of Dean's constitutional rights.

Evidence obtained, either directly or indirectly, from an unreasonable search or seizure generally cannot be used against the defendant in a criminal prosecution. See, *e.g.*, *Herring v. United States*, 555 U.S. 135, 139, 172 L. Ed. 2d 496, 129 S. Ct. 695 (2009) (explaining limited applicability of exclusionary rule); *Wong Sun v.*

*United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963) (explaining fruit of the poisonous tree doctrine).

Because the evidence obtained from Dean's person was obtained pursuant to an unlawful search and seizure, the evidence should have been suppressed and the district court erred in denying Dean's motion to suppress.

Reversed and remanded.