(241 P.3d 591)
No. 103,472

STATE OF KANSAS, *Appellee*, v. BILLY WHITE, *Appellant*.

Opinion filed November 12, 2010.

*Michael Redmon*, of Kansas City, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, for appellee.

Before MALONE, P.J., CAPLINGER and LEBEN, JJ.

MALONE, J.: Billy White appeals his felony convictions of possession of marijuana and possession of a controlled substance without a tax stamp. White claims the district court erred by denying his motion to suppress the evidence. Specifically, White argues that he was unlawfully detained at a traffic stop and his consent to a vehicle search was involuntary. He also argues that a subsequent pat-down was unlawful because there was no reasonable concern for officer safety.

FACTUAL AND PROCEDURAL BACKGROUND

On July 22, 2008, between 7 and 7:30 p.m., Kansas City, Kansas, Police Officer Jeff Bell was on routine patrol. Bell saw a vehicle stop at a stop sign with the left turn signal on and then proceed straight through the intersection without turning. Bell initiated a traffic stop. White was the driver and sole occupant of the vehicle. After some discussion about the turn signal, Bell took White's identification and proof of insurance back to the police car and ran a warrant check over the radio. There were no active warrants, but Bell learned that White had a record for a prior unspecified narcotics offense. Bell decided to ask for White's consent to search the vehicle. Bell wanted to search "just to make sure that there was nothing illegal in the vehicle."

At this point, Officer Christopher James arrived at the scene. James had not been dispatched, but he stopped to assist Bell if necessary. Bell reapproached White and asked for his consent to search the vehicle, and White agreed to the search. At Bell's request, White walked to the rear of the vehicle where James was standing. Bell acknowledged that White was cooperating fully with the investigation. The search of the vehicle did not uncover any evidence.

When White walked to the rear of the vehicle, James performed a pat-down. James did not engage in any conversation with White before performing the pat-down, nor did he recognize White from a prior encounter. When asked why he performed the pat-down, James testified, "It's officer safety. That's just what I've done since I've started out here. Just make sure nobody has weapons on them when I'm talking to them." James did not provide any further explanation for the pat-down. During cross-examination, James acknowledged that he "routinely" performs a pat-down in every traffic stop where a person is asked to step out of the car. The pat-down of White did not produce any weapons, but during the pat-down a clear plastic bag containing marijuana and drug paraphernalia fell out of White's waistband. White testified that the pat-down maneuver caused the bag to fall from his waistband, and James did not dispute this testimony. There was no drug tax stamp on the

bag containing the marijuana. At that point, Bell took White into custody. James conducted a more thorough search of White's person incident to the arrest and found $1,432 and several empty plastic baggies in White's pocket.

The State charged White with possession of marijuana with the intent to sell, possession of a controlled substance without a tax stamp, and possession of drug paraphernalia. White filed a motion to suppress the evidence. In the motion, White argued that he was illegally detained beyond the scope of the traffic stop and as a result his consent to the vehicle search was involuntary. White also argued that the pat-down was unlawful because there was no reasonable concern for officer safety. The district court held a hearing on the motion to suppress, and Bell, James, and White testified. After hearing the evidence, the district court denied the motion.

The case proceeded to a bench trial on stipulated facts, and White renewed his motion to suppress the evidence. By agreement of the parties, the district court found White guilty of felony possession of marijuana and possession of a controlled substance without a tax stamp, and the district court dismissed the possession of drug paraphernalia charge. The district court imposed a presumptive sentence of 30 months' imprisonment but placed White on probation for 12 months. White timely appealed his convictions.

On appeal, White claims the district court erred by denying his motion to suppress the evidence. In district court, the State has the burden of proving that a search and seizure was lawful. *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007). An appellate court reviews the district court's decision on a motion to suppress using a bifurcated standard. Without reweighing the evidence, the district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence. Then the ultimate legal conclusion regarding the suppression of evidence is reviewed using a de novo standard. *State v. Woolverton*, 284 Kan. 59, 70, 159 P.3d 985 (2007). Here, the material facts are not in dispute. When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law

over which an appellate court has unlimited review. *State v. Fitzgerald*, 286 Kan. 1124, 1126, 192 P.3d 171 (2008).

We will begin by setting forth the applicable constitutional provisions. The Fourth Amendment to the United States Constitution provides: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language and "provides protections identical to that provided under the Fourth Amendment to the United States Constitution." *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003).

This case involves a car stop based on a traffic infraction followed by a pat-down of the driver for officer safety. The controlling statute is K.S.A. 22-2402, which provides in part:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons."

This statute is a codification of the Fourth Amendment search and seizure principles expressed in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *Terry*, the United States Supreme Court determined that a law enforcement officer, without making an arrest, is authorized to stop an individual whom the officer reasonably suspects is involved in criminal activity. Furthermore, when an officer is justified in believing that the individual is armed and presently dangerous to the officer or to others, the officer may pat down the individual's outer clothing to determine whether the person is in fact carrying a weapon. 392 U.S. at 22-24.

Here, White challenges both the car stop and the subsequent pat-down. Although White acknowledges that the initial car stop was justified based on a traffic infraction, he claims that his detention exceeded the scope of the initial stop and that his consent to

the vehicle search was involuntary. White further claims that the subsequent pat-down was unlawful because there was no reasonable concern for officer safety. We will examine each of these claims in turn.

## CAR STOP

White argues that Bell improperly extended the scope of the traffic stop by requesting to search White's vehicle. White contends that the encounter never became consensual, as opposed to a detention, and that Bell had no reasonable suspicion that White was engaged in illegal activity. Therefore, White argues that both the continuing detention and the subsequent search were illegal.

The State argues that the encounter between Bell and White was at first a proper investigatory detention that lasted only long enough for Bell to carry out the purpose of the traffic stop. The State further maintains that when White consented to the vehicle search, the car stop ceased being a detention and became a voluntary encounter.

There are four types of police-citizen encounters: (1) voluntary or consensual encounters, which are not considered a seizure; (2) investigatory detentions or *Terry* stops; (3) public safety stops; and (4) arrests. *Thompson*, 284 Kan. at 772. A traffic stop is considered a seizure of the driver and all the passengers even though the purpose of the stop is limited and the resulting detention is brief. 284 Kan. at 773. The Kansas Supreme Court has previously described the reasonable scope of a routine traffic stop:

"A law enforcement officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he or she is entitled to operate the car, the driver must be allowed to proceed on his or her way, without being subject to further delay by the officer for additional questioning." *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 (1998).

The Kansas Supreme Court has further indicated that when the original purpose of a traffic stop has been completed, further questioning is permissible only if (1) the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning, or (2)

during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity. *Thompson*, 284 Kan. at 775.

White does not dispute that the traffic stop was justified at its inception. The parties apparently agree that White committed a turn signal violation which justified the stop. White also acknowledges that Bell was authorized to take his identification back to the police car to run a warrant check. There were no active warrants, but when Bell learned that White had a record for a prior unspecified narcotics offense, Bell decided to ask for White's consent to search the vehicle. Searching White's vehicle was beyond the scope of the initial traffic stop for a turn signal violation. In order to justify the extended detention, Bell needed reasonable suspicion of illegal activity beyond the traffic infraction or Bell needed to terminate the traffic stop and then inquire whether White was willing to engage in a consensual encounter. *Thompson*, 284 Kan. at 775.

The State does not argue that Bell's discovery of White's prior unspecified narcotics offense raised a reasonable and articulable suspicion of illegal activity. Rather, the State contends that when Bell requested White's consent to search the vehicle, the purpose of the traffic stop had been completed and at that point the encounter became voluntary.

To determine whether an encounter between a law enforcement officer and a citizen is a seizure or a voluntary encounter, a court must apply a totality of the circumstances test. Under this test, the interaction between a law enforcement officer and a citizen is consensual and not a seizure if, under the totality of the circumstances, the officer's conduct would convey to a reasonable person that he or she is free to refuse the officer's requests or otherwise end the encounter. 284 Kan. at 775. Because this analysis is fact-driven and specific to each individual case, there is no exclusive or definitive list of factors that should be considered when determining if an encounter was consensual or a seizure. 284 Kan. at 811. Factors tending to establish that an encounter was consensual include "knowledge of the right to refuse, a clear communication that the driver is free to terminate the encounter or refuse to answer questions, return of the driver's license and other documents, and a

physical disengagement before further questioning." 284 Kan. at 811. On the other hand, factors which tend to indicate a detention include

"the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory, the prolonged retention of a person's personal effects such as identification, a request to accompany the officer somewhere, interaction in a nonpublic place, absence of other members of the public, or the display of emergency lights. [Citations omitted.]" 284 Kan. at 811.

Here, in ruling on the motion to suppress, the district court stated:

"Well, based upon the evidence presented, the Court finds that the initial stop of the defendant was permissible, that there was—that the officer observed the traffic stop—or, I mean, a traffic infraction, that he immediately turned around and stopped the vehicle.

"He then made contact with the vehicle, identified the defendant, or what turned out to be the defendant, that the defendant remained cooperative throughout the proceedings, that he was notified through dispatch that this defendant had been involved in narcotic activity before, that gave rise to him asking if he could search the vehicle.

"There was no evidence presented that the defendant did anything but consent to that. There was no evidence of any coercion or repeated questioning or anything. The defendant immediately cooperated and gave consent [but] before that search, as would be custom, the defendant exited the vehicle and that it was customary to conduct a pat-down of the defendant for officer safety, and that during that pat-down, the—what's purported to be the drugs fell out from the defendant's waistband . . . ."

The district court did not make a specific finding that the investigatory detention became a voluntary encounter. However, when the judge said, "There was no evidence presented that the defendant did anything but consent to [the search]. There was no evidence of any coercion or repeated questioning or anything," it appears that the district court agreed with the State that the investigatory detention became a voluntary encounter.

We disagree. Based on the record, it appears there was no resolution to the traffic infraction that initially justified the stop, either through a verbal warning or a written citation. There is no evidence that Bell ever returned White's identification and other documents.

The record does not establish whether the emergency lights were displayed on any police vehicles, whether there was any disengagement between Bell and White, or whether Bell ever communicated to White that the traffic stop had ended and he was free to go. There is insufficient evidence in the record to establish that the investigatory detention evolved into a voluntary encounter. The State has the burden of proving that a search and seizure was lawful. *Thompson*, 284 Kan. at 772.

Bell could have attempted to achieve his goal of obtaining consent to search White's vehicle by following proper law enforcement procedure. The first step would have been for Bell to return White's identification and other documents. Then Bell should have resolved the initial purpose of the stop by giving White either a verbal warning or a written citation for the traffic infraction. Next, Bell should have conveyed to White in some manner, either verbally or by his conduct, that the traffic stop had ended and White was free to go. Although not required by law, Bell could have simply stated, "Have a nice day. You are free to go." Then, after pausing for a brief moment or stepping back from the car, Bell could have inquired whether White was willing to submit to additional questioning. If White agreed to respond to additional questioning, Bell could have proceeded to ask for his consent to search the vehicle. In order to clearly establish that the consent was voluntary, the better practice would have been for Bell to inform White that he was not required to consent to the search.

Bell did not follow any of these steps. As a result, we must conclude that White was still detained as part of the traffic stop when Bell asked for his consent to search the vehicle. In this instance, Kansas law is clear that White's consent cannot be considered voluntary. In *State v. Smith*, 286 Kan. 402, 184 P.3d 890 (2008), a law enforcement officer stopped a vehicle to investigate a broken taillight. Both the driver and the passenger were detained. Another officer recognized the passenger and suspected, based on information received prior to the stop, that she had drugs in her purse. The officer asked for and received consent to search the purse, in which he found a bag containing drugs. The district court found

the defendant's consent was given during the period of her detention and granted the motion to suppress.

After examining United States Supreme Court jurisprudence, the Kansas Supreme Court found that the request for consent and the subsequent search of the passenger exceeded the scope and purpose of her detention. The court held that law enforcement officers may not

"expand the scope of a traffic stop to include a search not related to the purpose of the stop, even if a detainee has given permission for the search. Rather, we continue to adhere to our longstanding rule that consensual searches during the period of a detention for a traffic stop are invalid under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights." 286 Kan. at 419.

Following the analysis in *Smith*, the record here shows a traffic stop that exceeded its initial scope. There is no evidence of Bell having a reasonable and articulable suspicion of illegal activity beyond the traffic infraction, and there is no evidence that the detention had ended and the encounter became consensual. The vehicle search was not related to the purpose of the stop for the traffic signal violation. We must therefore conclude that White's consent to the vehicle search cannot be considered voluntary and that Bell violated White's constitutional rights by searching the vehicle. However, this conclusion is not dispositive of the appeal because the vehicle search did not uncover any evidence. The marijuana and drug paraphernalia were found when Officer James patted down White for weapons. Accordingly, we will proceed with our analysis of whether the pat-down was justified for officer safety.

## OFFICER-SAFETY PAT-DOWN

White argues that the officer-safety pat-down, sometimes called a frisk, was an illegal search and all the evidence found as a result of that search should have been suppressed. Specifically, White argues that James had no reasonable suspicion that White was armed and dangerous or that James' safety or the safety of others might have been in jeopardy.

The State maintains again that the encounter was consensual and, therefore, a *Terry* analysis is unnecessary. As discussed above,

however, the State failed to prove the encounter became voluntary. The State further argues that "the officers, by their testimony demonstrated that they were acting as reasonably prudent men in the circumstances" when James conducted the pat-down.

To restate the pertinent facts, James arrived on the scene without being dispatched and saw Bell talking to White. White then stepped out of his car and walked toward James, who was standing near the rear bumper of White's car. White appeared to be cooperating fully with the investigation. At that point, James performed the pat-down. James did not engage in any conversation with White before performing the pat-down, nor did he recognize White from a previous encounter. When asked why he performed the pat-down, James testified, "It's officer safety. That's just what I've done since I started out here. Just make sure nobody has weapons on them when I'm talking to them." James did not provide any further explanation for the pat-down. During cross-examination, James acknowledged that he "routinely" performs a pat-down in every traffic stop where a person is asked to step out of the car.

In order to justify a pat-down, *Terry* requires that the State must show that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27. The United States Supreme Court recently addressed the requirements for a permissible pat-down of a driver during the course of a traffic stop: "To justify a pat-down of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327, 172 L. Ed. 2d 694, 129 S. Ct. 781 (2009).

The *Terry* requirements for an officer-safety pat-down are codified in Kansas at K.S.A. 22-2402(2), which states: "When a law enforcement officer has stopped a person for questioning . . . and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons." Generally, a pat-down maneuver only allows an officer to pat down a person's outer clothing without placing the officer's hands inside any pockets or under the outer surface of any gar-

ment, unless or until a weapon is found. *State v. Golston,* 41 Kan. App. 2d 444, 455, 203 P.3d 10 (2009). Consent is not a necessary prerequisite to an officer-safety pat-down for weapons. As long as the officer reasonably suspects that his or her personal safety requires it, the officer may conduct a pat-down without the consent of the suspect. 41 Kan. App. 2d at 455.

For a *Terry* stop and frisk to meet constitutional requirements, a law enforcement officer must be able to point to specific, articulable facts to support reasonable suspicion for both the stop and the frisk. *State v. Dean,* 42 Kan. App. 2d 558, Syl. ¶ 2, 214 P.3d 1190 (2009). In determining whether a *Terry* frisk was based on reasonable suspicion that the individual was armed and dangerous, the State need not establish that the officer was absolutely certain that the individual was armed. Rather, the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger. 42 Kan. App. 2d 558, Syl. ¶ 5.

In *State v. Burton,* 37 Kan. App. 2d 916, 922, 159 P.3d 209 (2007), this court found that an officer was not justified in frisking the defendant where the officer failed to articulate any concern for his safety when questioned at the suppression hearing. The officer testified that he always conducted pat-downs for his safety, but that he had no particular reason to fear for his safety in this instance. Similarly, in the instant case, James testified that he always conducted pat-downs for officer safety, but pointed to no particular reason to suspect White posed a threat. The United States Supreme Court has long disapproved of such routine searches for weapons without any reasonable suspicion that the person subjected to the pat-down is dangerous: "Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' . . . . The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked." *Ybarra v. Illinois,* 444 U.S. 85, 93-94, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979).

Here, the evidence established that White was cooperating fully with the car stop and Bell's investigation. There is nothing in the record to indicate that the car stop was in a high-crime area. The

stop occurred on July 22 between 7 and 7:30 p.m., so it was not dark outside. Bell had learned through dispatch that White had a record for a prior unspecified narcotics offense, but there was no information that the prior offense involved a weapon. In any event, the record does not show whether Bell communicated the information about the prior offense to James. James did not talk with White before performing the pat-down, nor did he recognize White from a previous encounter. He testified candidly that it was his routine practice to perform a pat-down every time he conducted a traffic stop and someone stepped out of the car. Based on United States Supreme Court precedent and this court's reasoning in *Burton*, we conclude that James was not justified in frisking White because James failed to articulate any concern for his safety, nor would a reasonable person have believed that White was armed and dangerous under the circumstances.

We recognize that law enforcement officers have dangerous jobs, and traffic stops are especially perilous. As a result, officers must be allowed to take reasonable steps to protect their safety and the safety of others. Courts will uphold a pat-down for officer safety as long as the officer articulates any reasonable suspicion that the officer's personal safety requires it. See, *e.g.*, *In re L.A.*, 270 Kan. 879, 892-93, 21 P.3d 952 (2001) (frisk of juvenile suspects was justified where officers were investigating a possible car burglary, it was dark, and the suspects were located in a tent); *State v. Wonders*, 263 Kan. 582, 584-85, 952 P.2d 1351 (1998) (frisk was permitted where passenger was known to the officer from prior contacts); *Golston*, 41 Kan. App. 2d at 455 (officer reasonably feared for his safety because defendant was a documented gang member). But a law enforcement officer cannot "routinely" perform a pat-down every time the officer personally encounters a citizen and expect the courts to sanction such a blatant constitutional violation.

Under the facts of this case, James had no reasonable suspicion that White posed a danger to his safety or the safety of others. Therefore, the pat-down violated White's constitutional rights. The marijuana and drug paraphernalia seized as a result of the unlawful pat-down were inadmissible evidence under the exclusionary rule. The currency and plastic baggies seized in the search incident to

White's arrest were inadmissible evidence as fruit of the poisonous tree. See *Wong Sun v. United States,* 371 U.S. 471, 493, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). We conclude the district court erred by denying White's motion to suppress the evidence.

Reversed and remanded with directions to grant the motion to suppress.