NOT DESIGNATED FOR PUBLICATION

No. 118,223

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of A.A-M.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DELIA M. YORK, judge. Opinion filed March 2, 2018. Affirmed.

*Michael J. Nichols*, of Michael J. Nichols, P.A., of Kansas City, for appellant.

*Candice A. Alcaraz*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER, J., and BURGESS, S.J.

PER CURIAM: A.A-M. appeals his juvenile court adjudication of one count of unlawfully possessing cocaine. A.A-M. claims the district court erred in denying his motion to suppress the evidence. Finding no error, we affirm the district court's judgment.

On December 4, 2016, Kansas City Police Department Officer Rylan Douglas was on patrol as part of two-man unit. At around 6:18 p.m., Douglas observed a Jeep Grand Cherokee parked in an alleyway. Douglas noticed that the Jeep had three occupants who appeared to be just sitting in the Jeep. Suspecting that the driver of the Jeep was in violation of a Wyandotte County ordinance which forbids parking in alleyways except for loading or unloading, Douglas decided to investigate the situation. He briefly activated his emergency lights and siren, initiating a traffic stop.

1

As soon as the emergency lights were activated, a rear passenger, later determined to be A.A-M., exited the Jeep and walked into a fenced-in yard. Douglas could not see behind the fence, the area was unknown to him, and he did not know what A.A-M. was doing behind the fence. Douglas exited his vehicle and ordered A.A-M. back to the Jeep. Initially, A.A-M. ignored this order and remained behind the fence. Douglas approached the fence on foot and when he reached the yard, he saw A.A-M. holding a dog, which was acting wild. A man then came from the house into the fenced-in backyard. A.A-M. handed the dog to the man and started to return to the Jeep.

As A.A-M. walked back to the Jeep, Douglas noticed a knife in his pocket. Douglas took the knife from A.A-M. and gave it to the man, whom Douglas presumed was A.A-M.'s father. Based on A.A-M.'s actions and the fact that he was carrying a knife, Douglas performed an officer safety pat-down to determine if A.A-M. had any other weapons. During the pat-down, Douglas felt a bag in A.A-M.'s left rear pocket that contained a ball shaped object. Based on his training and experience, Douglas believed this object was illegal narcotics, so he seized the bag from A.A-M.'s pocket. The substance in the bag later tested positive for cocaine.

On December 6, 2016, the State charged A.A-M., who was 16 years old, with one count of possession of cocaine in Wyandotte County juvenile court. A.A-M. later filed a motion to suppress the evidence. The motion argued that the "evidence recovered from the involuntary pat-down search should be suppressed because [A.A-M.] was seized without any reasonable suspicion that he was involved in criminal activity." The district court held a hearing on the motion on May 8, 2017. The State called Douglas as its only witness, and he testified to the above facts. During cross-examination, Douglas could not give any specific facts as to why a passenger exiting a vehicle would indicate criminal activity related directly to the passenger. Douglas further testified that, other than the traffic infraction, he had no reasonable suspicion of any other crimes.

2

On May 17, 2017, the district court ruled on the motion from the bench. The district court denied the motion to suppress, finding that the "detention was reasonable, given the circumstances." The district court also based its ruling on safety reasons and stated that Douglas "did what any reasonable officer would do. He followed [A.A-M.] to make sure that there wasn't going to be [any] further safety concerns for the other folks in the vehicle, [or] for officers on the scene."

On June 26, 2017, following a bench trial on stipulated facts, the district court adjudicated A.A-M. guilty of unlawfully possessing cocaine. On July 26, 2017, the district court sentenced A.A-M. to nine months of probation and ordered him to obtain a drug and alcohol evaluation. A.A-M. timely filed a notice of appeal.

On appeal, A.A-M. claims the district court erred in denying his motion to suppress the evidence. Specifically, A.A-M. argues that he "was seized without any reasonable suspicion that he was involved in criminal activity." He also argues that he was "searched without a reasonable belief that he posed a risk to officer safety." A.A-M. does not challenge the validity of the initial traffic stop or the actual seizure of the bag of cocaine from his pocket based on Douglas' belief that the object was illegal narcotics.

The State responds by arguing that the traffic stop provided reasonable suspicion to momentarily detain all occupants of the vehicle, including A.A-M. as a passenger. The State further argues that the reasonable suspicion to detain A.A-M. could not be dispelled prior to the search. Finally, the State argues that during the traffic stop, officers had reasonable suspicion that their safety required a frisk of A.A-M.

The standard of review of a district court's decision on a motion to suppress applies a bifurcated standard. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. In reviewing the factual

3

findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

We will begin by setting forth the applicable constitutional provisions. The Fourth Amendment to the United States Constitution provides: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language and "provides protections identical to that provided under the Fourth Amendment to the United States Constitution." *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003).

This case involves a car stop based on a traffic infraction followed by a pat-down of one of the passengers for officer safety. In *Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977), the United States Supreme Court observed that an officer faces "inordinate risk . . . as he approaches a person seated in an automobile." Likewise, this court has recognized that "law enforcement officers have dangerous jobs, and traffic stops are especially perilous." *State v. White*, 44 Kan. App. 2d 960, 972, 241 P.3d 591 (2010). Nonetheless, an officer cannot infringe on a person's constitutionally protected rights, even when the situation is potentially dangerous for the officer.

The encounter between Douglas and A.A-M. began as a traffic stop. Douglas observed the driver of a parked Jeep allegedly violating a Wyandotte County ordinance prohibiting parking in alleyways except for loading or unloading. Without making an arrest, a law enforcement officer may stop any person in a public place whom the officer reasonably suspects is committing, has committed, or is about to commit a crime. K.S.A. 22-2402(1). A traffic violation provides an objectively valid reason to effectuate a traffic stop. *State v. Marx*, 289 Kan. 657, 662, 215 P.3d 601 (2009). When law enforcement officers make a traffic stop, a passenger in the car, like the driver, is seized for Fourth

4

Amendment purposes. *Brendlin v. California*, 551 U.S. 249, 257, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). A.A-M. does not challenge the validity of the initial traffic stop.

A.A-M. argues that the only purpose of the traffic stop was to investigate the driver of the Jeep for illegally parking in an alleyway. A.A-M. points to the fact that Douglas testified that other than the traffic infraction, he had no reasonable suspicion of any other crimes. Thus, A.A-M. argues that his detention "was not within the scope of the investigation of the traffic infraction that served as the basis for the stop."

Citing *State v. Smith*, 286 Kan. 402, 184 P.3d 890 (2008), A.A-M. argues that a passenger exiting a vehicle stopped for a traffic infraction does not raise a reasonable suspicion of additional criminal activity. In *Smith*, a police officer conducted a traffic stop on a vehicle for having no taillights. A passenger in the vehicle got out of the car and sat on a curb. Another officer arrived on the scene who suspected that the passenger may be in possession of drugs based on information he had received prior to the traffic stop. The second officer immediately began questioning the passenger about matters unrelated to the traffic stop and eventually asked for permission to search her purse, to which she consented. During the search, the officer found methamphetamine.

On appeal, our Supreme Court determined that because the passenger stayed at or near the focal point of the investigation of the traffic stop, she passively submitted to the show of authority and was seized for Fourth Amendment purposes. 286 Kan. at 409. The court went on to hold that "consensual searches during the period of a detention for a traffic stop are invalid under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights." 286 Kan. at 419.

A.A-M. argues that because his act of exiting the Jeep stopped for a traffic infraction did not raise a reasonable suspicion of additional criminal activity, Douglas had no right or authority to order him to return to the Jeep. We agree with A.A-M. that

5

his act of exiting the Jeep did not raise reasonable suspicion of additional criminal activity beyond the purpose of the initial traffic stop. But as established by the evidence at the hearing on the motion to suppress, Douglas' order for A.A-M. to return to the Jeep was based on officer safety concerns rather than reasonable suspicion of criminal activity.

*State v. Reiss*, 299 Kan. 291, 326 P.3d 367 (2014), is instructive on whether a law enforcement officer can order a person who exits a vehicle during a traffic stop to return to the car for officer safety reasons. In *Reiss*, an officer activated his emergency lights behind three vehicles, intending to pull over a blue truck. Reiss, who was driving a red truck directly behind the blue truck, pulled over thinking that the officer was trying to stop him. Reiss exited his truck, headed directly for the officer, and began yelling at the officer for pulling him over. For safety reasons, the officer ordered Reiss to get back inside his truck. Reiss eventually complied, and the officer then asked him for his driver's license and registration. While making this request, the officer became suspicious that Reiss was intoxicated. After performing an investigation, the officer arrested Reiss for driving under the influence. 299 Kan. at 292-94.

On appeal, our Supreme Court determined that the officer was justified in ordering Reiss to return to his vehicle for officer safety reasons. 299 Kan. at 300. The court observed that "an officer's order that a person either exit or remain in a vehicle is a small intrusion on individual liberty." 299 Kan. at 301. The court further observed that Reiss' "liberty interest to remain outside his truck was small, if present at all." 299 Kan. at 302. Nevertheless, the court concluded that when the officer asked for Reiss' license and registration for identification purposes, the stop was converted from a safety detention into an investigatory detention without reasonable suspicion of criminal activity. 299 Kan. at 302-03. The court ultimately suppressed the evidence and reversed Reiss' DUI conviction. 299 Kan. at 304.

6

The facts in *Reiss* are distinguishable from the facts herein. In *Reiss*, the officer ordered the driver to return to his car during a traffic stop, whereas A.A-M. was a passenger in his vehicle. Moreover, the driver in *Reiss* was yelling at the officer for having been pulled over, whereas A.A-M. was not making any threats to the officers when Douglas ordered him to return to the Jeep. Still, *Reiss* supports the proposition that during a traffic stop, an officer has grounds to order the occupant of a vehicle to return to the car for officer safety reasons when warranted by the facts of the case. Moreover, other courts have found it permissible for an officer to order an occupant back into the vehicle after exiting. See, e.g., *United States v. Sanders*, 510 F.3d 788, 789-91 (8th Cir. 2007); *United States v. Williams*, 419 F.3d 1029, 1031-34 (9th Cir. 2005); *United States v. Helton*, 232 Fed. Appx. 747, 751 (10th Cir. 2007) (unpublished opinion).

Returning to our facts, A.A-M. exited the Jeep as soon as Douglas activated the emergency lights and he walked into a fenced-in yard. Douglas could not see behind the fence and he did not know what A.A-M. was doing. There were three occupants in the Jeep, including A.A-M., and presumably it was dark outside. Douglas needed to control the situation. The purpose of the stop was to investigate the driver of the Jeep for the alleged traffic violation, but Douglas needed to make sure he and his fellow officer could safely do so. Douglas, or any officer, could not have two occupants in a car and another behind a fence. Under these circumstances, we agree with the district court that it was reasonable for Douglas to order A.A-M. to return to the Jeep for officer safety reasons.

A.A-M. points out that Douglas eventually discovered that A.A-M. had walked into his own yard and was trying to control his dog. A.A-M. argues that even if the initial order for him to return to the Jeep was justified, any "reasonable suspicion had dissipated prior to the search." But as we have already discussed, Douglas' order for A.A-M. to return to the Jeep was based on officer safety concerns, not reasonable suspicion of criminal activity. If Douglas had discovered that A.A-M. was in his own yard with his father before ordering him to return to the Jeep, we might agree with A.A-M. that under

7

those circumstances there would have been insufficient concern for officer safety to justify the order. But for the reasons we have discussed, Douglas had grounds to order A.A-M. to return to the Jeep for officer safety reasons at the time he gave the order.

As A.A-M. walked back to the Jeep, Douglas observed a knife in his pocket in plain view. Douglas took the knife from A.A-M. and gave it to the man in the yard, whom Douglas presumed by that time was A.A-M.'s father. Based on A.A-M.'s actions and the fact that he was carrying a knife, Douglas performed an officer safety pat-down.

The requirements for an officer-safety pat-down are codified in Kansas at K.S.A. 22-2402(2), which states: "When a law enforcement officer has stopped a person for questioning . . . and reasonably suspects that such officer's personal safety requires it, such officer may frisk such person for firearms or other dangerous weapons." Consent is not a necessary prerequisite to an officer-safety pat-down for weapons. As long as the officer reasonably suspects that his or her personal safety requires it, the officer may conduct a pat-down without the consent of the suspect. *State v. Golston*, 41 Kan. App. 2d 444, 455, 203 P.3d 10 (2009).

For a stop and frisk to meet constitutional requirements, a law enforcement officer must be able to point to specific, articulable facts to support reasonable suspicion for both the stop and the frisk. *State v. Dean*, 42 Kan. App. 2d 558, Syl. ¶ 2, 214 P.3d 1190 (2009). In determining whether a frisk was based on reasonable suspicion that the individual was armed and dangerous, the State need not establish that the officer was absolutely certain that the individual was armed. Rather, the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger. 42 Kan. App. 2d 558, Syl. ¶ 5.

Here, even though Douglas gave the knife to A.A-M.'s father, we agree with the district court that there was still a valid officer safety concern to justify the pat-down to

make sure that A.A-M. did not have any additional weapons. A reasonable person in Douglas' position would suspect that his personal safety and the safety of his fellow officer justified a pat-down of A.A-M. for weapons. The pat-down led to the seizure of cocaine from A.A-M.'s pocket, and A.A-M. does not challenge the actual seizure of the drugs from his pocket based on Douglas' belief that the object was illegal narcotics.

To sum up, every search and seizure case under the Fourth Amendment turns on its individual facts. Here, Douglas initiated an investigatory detention based on an alleged traffic infraction. As part of the investigatory detention regarding the traffic infraction and for officer safety reasons, Douglas had grounds to order A.A-M. to return to the Jeep. As A.A-M. walked back to the Jeep, Douglas noticed a knife in his pocket which created a reasonable concern for officer safety sufficient to justify the pat-down. During the pat-down, Douglas felt an object that he believed to be a bag of cocaine based on his training and experience, which led to the seizure of the evidence. Under these circumstances, we conclude that A.A-M.'s constitutional rights were not violated and the district court did not err in denying his motion to suppress the evidence.

Affirmed.