IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,614

STATE OF KANSAS,
*Appellee*,

v.

GROVER D. JAMES,
*Appellant*.

SYLLABUS BY THE COURT

1.

When seeking to demonstrate that the interest of justice warrants a new trial based on newly discovered evidence, the defendant bears the burden of establishing that the newly proffered evidence could not, with reasonable diligence, have been produced at trial and that the evidence is so material that there is a reasonable probability it would produce a different result upon retrial.

2.

The law-of-the-case doctrine prevents a party from relitigating an issue already decided on appeal in successive stages of the same proceeding.

3.

Under the doctrine of stare decisis, points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised.

4.

The test for effectiveness of appellate counsel is the same as for trial counsel. A defendant claiming ineffective assistance of appellate counsel must demonstrate counsel's performance, considering the totality of the circumstances, fell below an objective standard of reasonableness. And, to determine whether counsel's performance was objectively reasonable, the reviewing court judges the challenged conduct on the facts of the particular case, viewed as of the time of the counsel's conduct.

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Submitted without oral argument November 3, 2023. Opinion filed August 2, 2024. Affirmed.

*Michael P. Whalen,* of Law Office of Michael P. Whalen, of Wichita was on the brief for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett,* district attorney, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Grover D. James was convicted of first-degree premeditated murder and criminal possession of a firearm committed in 2015. This court affirmed his convictions in *State v. James*, 309 Kan. 1280, 1281, 443 P.3d 1063 (2019). He later filed several petitions for relief in district court, all of which were denied. His appeals from those various proceedings are consolidated for this appeal.

The background to this appeal is set out in *James*, 309 Kan. at 1281-83. Highly summarized, the events leading to James' convictions revolved around a birthday party for Rance Kindred at a shop in Wichita. Several participants in the party became confrontational with each other. Video surveillance footage at the business and the

parking lot outside the business showed James, the victim (Leon McClennon), and others enter the store basement from the parking lot. 309 Kan. at 1282.

It was undisputed that James fired two shots, one of which fatally struck McClennon in the head. The shooting itself was outside the view of the surveillance cameras, but video footage showed McClennon collapsing onto the floor, and, about 37 seconds later, James walking past the body and up the stairs to the parking lot. 309 Kan. at 1282-83. James admitted firing two shots, but he denied he was aiming at anyone and claimed he did not intend to hit, let alone kill, McClennon. His intent was therefore a critical factor in the State's case.

Several witnesses testified about how the confrontation played out that evening, suggesting the killing was deliberate.

Kindred testified at the trial. In addition, the State introduced a videorecording of Kindred making statements to McClennon's sister when they got together the day after the shooting. This court set out his video testimony and his courtroom testimony in *James*, 309 Kan. at 1290-92.

In the video, Kindred was asked whether James had said he was leaving the party to get a gun. 309 Kan. at 1290. According to Kindred, James had told him he always had a gun with him and, if he had wanted to shoot anyone, he would have done so earlier. 309 Kan. at 1290. Kindred said he informed McClennon's sister that he told Kindred's son, Artadius Johnson, to leave James alone after an earlier altercation because they needed to keep James on their side. 309 Kan. at 1290-91. According to Kindred, James was "'a killer.'" He would "'kill [someone] out here and don't give a fuck about it.'" 309 Kan. at 1291.

3

The video further disclosed that Kindred also said Johnson and McClennon had run into the basement. They were telling Kindred that James was his "'boy'" and that he could stop James. 309 Kan. at 1291. Kindred said he walked toward James and tried to explain who McClennon and Johnson were and persuade James not to shoot them. Kindred thought he had convinced James to stop, but Johnson and McClennon were standing on the dance floor, acting as if they were preparing to fight, and saying "'let that nigga go.'" 309 Kan. at 1291.

Kindred said he told James that, if he wanted to fight Johnson and McClennon, he could, but he needed to put the gun away. Believing James had put the gun in his pocket, Kindred moved out of the way, expecting a fight to ensue. But, as soon as he moved out of the way, he saw James put the gun in his right hand and shoot into the air. 309 Kan. at 1291.

In the video testimony, Kindred further explained Johnson and McClennon ran in different directions when James fired the first shot. Kindred ran behind James. Kindred did not say whether he believed James intended to hit McClennon with the second shot. He saw McClennon start to stumble and go down. He initially thought McClennon was just ducking; Kindred realized McClennon had been hit when his body went limp. 309 Kan. at 1291.

Significantly, at trial, Kindred testified he lied when he told McClennon's sister that James always "'roll[ed]'" with a gun. 309 Kan. at 1291. In his trial testimony, Kindred said, "'[I]f I know he had a gun, I would have told him don't come to my party with no gun.'" *James*, 309 Kan. at 1291.

The jury found James guilty, and he was sentenced to a hard 50 life sentence for first-degree murder and a concurrent 21-month sentence for criminal possession of a firearm. *James*, 309 Kan. at 1297.

4

On November 12, 2019, James filed a pro se petition under K.S.A. 60-1507 seeking a new trial and asserting that he received ineffective assistance of both trial and appellate counsel. On June 15, 2020, he filed a motion to amend his petition to add a claim for relief based on newly discovered evidence. On July 6, 2020, he filed essentially the same motion. He then filed another, very similar motion on July 9, 2020.

On May 27, 2021, the district court conducted a hearing and denied James' original claims. The order formally denying those claims was belatedly entered on October 26, 2022.

On December 2, 2021, the district court entered an order denying James' various remaining claims. James filed a timely notice of appeal from that order. On November 8, 2022, he docketed the appeal with the Court of Appeals under case number 125,729. He also filed a timely amended notice of appeal including the October 26, 2022 order.

Meanwhile, in his criminal case, James filed a "Motion for Newly Discovered Evidence" on June 16, 2020. He followed this motion up with an "Amended Motion for Newly Discovered Evidence & Motion for New Trial Based on Newly Discovered Evidence" on July 27, 2020. The district court denied this motion on October 29, 2021. James filed a timely notice of appeal from that order. He docketed his appeal on December 16, 2021, under case number 124,614. This did not deter James from continuing to file motions in district court. On February 25, 2022, he filed a "Motion for Relief from Judgment or Order under . . . K.S.A. 60-260(b)(2)". It appears this motion has never been ruled on, but that is not relevant to this appeal. A district court loses jurisdiction to entertain posttrial motions in a case after an appeal has been docketed in that case. See, e.g., *State v. Thurber*, 313 Kan. 1002, 1007, 492 P.3d 1185 (2021); *In re Care & Treatment of Emerson*, 306 Kan. 30, 35, 392 P.3d 82 (2017).

On December 19, 2022, this court granted James' motion to consolidate his two appeals, and the appeals proceeded under appellate case No. 124,614.

*Discussion*

James filed multiple redundant pleadings under two case numbers in district court. These pleadings focused on three primary issues: a claim that "newly discovered evidence" in the form of an affidavit that Kindred had lied in his police interview was exculpatory; a claim that his trial counsel was ineffective; and a claim that his appellate counsel was ineffective in his direct appeal.

I.      Newly Discovered Evidence

James filed at least four motions/petitions seeking a new trial based on his assertion that Kindred recanted his statements to police. These pleadings are evaluated under K.S.A. 22-3501(1), which specifically refers to newly discovered evidence and allows a court to "grant a new trial to the defendant if required in the interest of justice."

James relies on an affidavit apparently produced in James' own handwriting and signed by Kindred stating that Kindred's statements made in the days immediately following the shooting were untrue.

This court reviews the denial of a motion for a new trial based on newly discovered evidence for whether the district court abused its discretion. See *State v. Engelhardt*, 280 Kan. 113, 141, 119 P.3d 1148 (2005). A district court abuses its discretion when denying a motion for new trial based on newly discovered evidence if the decision was arbitrary, fanciful, or unreasonable; was based on an error of law; or was based on an error of fact. *State v. Lyman*, 311 Kan. 1, 16, 455 P.3d 393 (2020).

Our courts do not favor motions for new trial based on newly discovered evidence and view them with great caution. *State v. Thomas*, 257 Kan. 228, 233, 891 P.2d 417 (1995). When seeking to demonstrate that the interest of justice warrants a new trial based on newly discovered evidence, the defendant bears the burden of establishing that the newly proffered evidence is indeed "'new'—that is, it could not, with reasonable diligence, have been produced at trial" and that the evidence is so material "that there is a reasonable probability it would produce a different result upon retrial." *State v. Moncla*, 269 Kan. 61, 64, 4 P.3d 618 (2000).

James fails to satisfy either part of this test. Not only could the evidence of Kindred's change of heart about what he witnessed at the scene of the shooting have been produced at trial, it *was* produced: Kindred testified to the jury that he had made up earlier statements, in particular, those he made to McClennon's sister, tending to show James premeditated the shooting. On the witness stand, Kindred repudiated his earlier statements to police and family members and denied having seen James shoot McClennon. He also repudiated his earlier statements that James always carried a gun on his person.

Having heard Kindred recant his earlier statements and having heard the testimony of other witnesses, it is unlikely the jury would have reached a different verdict if it had seen Kindred's affidavit. James admitted he had a gun and fired two shots. He either already had the gun on his person when he showed up at the party, or he went out and obtained the gun and returned to the party with it. There was no evidence suggesting anyone else had fired a gun. It made no material difference whether Kindred observed James fire the shot that killed McClennon.

When the person making the allegedly false statement at trial was subject to cross-examination and his credibility was attacked at trial and when that witness was only one of several to implicate the defendant in the crime, this court is disinclined to find that

there was a reasonable probability that a subsequent impeachment of the trial testimony would produce a different result upon retrial. See *Engelhardt*, 280 Kan. at 141-42.

The district court did not abuse its discretion when it denied James' motion for a new trial based on newly discovered evidence.

II.      Ineffective Assistance of Counsel Claims

James alleges both his trial and appellate counsel were ineffective to such an extent that he was denied fair hearings. His claim focused on a blend of speedy-trial violations and the manner in which his attorneys dealt with legal theories and continuances, maintaining he had acquiesced in the extensions. The district court denied his petition for relief without conducting an evidentiary hearing.

*Standard of Review*

In reviewing a district court's decision on claims of ineffective assistance of counsel, appellate courts review the district court's factual findings using a substantial competent evidence standard. Appellate courts review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

When the district court summarily dismisses a K.S.A. 60-1507 motion, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *State v. Vasquez*, 315 Kan. 729, 731, 510 P.3d 704 (2022).

Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed.

2d 674, (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *Evans*, 315 Kan. at 217-18.

To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. *Khalil-Alsalaami*, 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

To establish ineffective assistance of counsel on appeal, defendant must show (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. *Khalil-Alsalaami*, 313 Kan. at 526.

*James' Direct Appeal*

This court discussed James' speedy trial issues in his direct appeal in the context of his right to appear at continuance hearings. Although he now reframes the issue in terms of ineffective assistance of counsel, whether his speedy trial rights were violated has already been determined.

This court described James' communications with Brad Sylvester, his attorney at that time:

> "James' first appearance on the charges was in later October 2015. On December 14, 2015, James filed with the clerk of the court a letter he had written to his then-attorney Brad Sylvester. The letter asked Sylvester to take certain actions in his case. James asked Sylvester to 'file and pursue any and all necessary paperwork to insure a speedy trial, I'd also ask you to file a 180 day writ [and] a motion for statutory speedy trial.' James later reiterated a request that Sylvester 'vigor[o]usly pursue' his 'speedy trial' and asked that Sylvester 'not continue my preliminary hearing . . . or continue my trial ever.' James also asked to be present at 'any and all hearings . . . when my case is d[i]scussed.'
>
> . . . .
>
> "On February 16, Sylvester requested a continuance in a filing titled, 'Notice and Order Concerning Defense Counsel's Request to Continue Trial after Consultation with the Defendant.' District Court Judge Jeffrey E. Goering granted the request to continue

10

the case and reset trial for March 14, 2016. The form document, which was signed and submitted by Sylvester, contained the following paragraph:

> "'In submitting this request to the Court, the named defense counsel represents to the Court that counsel has consulted with the named defendant about this continuance and this continuance is to be charged to the defendant pursuant to K.S.A. 22-3402(g).'"

"On March 16, Sylvester asked for another continuance, using an identical form document. Judge Goering again granted the request and reset trial for June 6, 2016.

"On April 14, James filed a motion seeking to dismiss counsel. James alleged an irreconcilable conflict and complete breakdown of communication. That same day, the motion was set for hearing on April 22, 2016.

"James was present for the motion hearing before District Court Judge John J. Kisner, Jr. On April 22 Judge Kisner acknowledged James' previous concerns over a speedy trial. Judge Kisner informed James that recent caselaw required that any further continuances would require James to sign off on them or attend a hearing. Judge Kisner denied the motion to dismiss counsel and informed James that any appointment of new counsel would mean more time for trial preparation. James responded, 'I'm not worried about the time.'

"During the hearing, the court and parties discovered that a June 6 start date for trial—the date that had been set on March 16—conflicted with the court's schedule. Trial was reset for July 11, 2016. Judge Kisner advised James that the time would not be charged to the State and asked if James was agreeable to the new trial date. James said he understood and agreed to the new date.

"On June 15, 2016, James filed an Objection to Continuance.

> "'COMES NOW, the Defendant, pro se, formally objecting to any continuance sought by either the State or defense counsel in the above entitled action. The defendant further asserts his statutory, K.S.A. 22-3208(7), and

11

Fourteenth Amendment Due Process right to appear at all "critical stages" in a prosecution including any proceeding where the court may order that the Defendant has waived any constitutional or statutory right.'

"The same day, James moved to dismiss the case with prejudice. James alleged that his 'statutory right to a fast and speedy trial, and his constitutional right to Due Process and fast and speedy trial' had been violated.

"In his motion, James set out a timeline of events, alleging that his trial had been continued by his attorney on February 16, March 14, and June 6, outside of James' presence and against his 'clear wishes.' James further alleged, 'At no time has the defendant been present in the courtroom or by video, and asked if he agreed to the continuance or given the opportunity to object to the continuance' and that '[t]here are no signed waivers of speedy trial or signed acknowledgments of continuance.' According to James, the time the State had to bring him to trial under K.S.A. 22-3402 began to run on January 13, 2016, the date of his preliminary hearing, and expired on June 12, 2016.

"The same day James filed his pro se motion, the district court clerk sent Sylvester a letter advising him of the filing and saying that no further action would be taken unless Sylvester directed otherwise.

"On June 20, James filed another motion seeking to have Sylvester replaced. In an affidavit filed the next day, James alleged he had informed Sylvester in writing that he wanted to be present at all hearings but Sylvester had nevertheless failed to consult him about any of the previous continuances. James further alleged that he had not been given the opportunity to appear at any of the continuance hearings and that, had he been present, he would have objected to any continuance.

"On July 1, Judge Kaufman heard James' motion for new counsel. James explained that he felt there was a communication breakdown between himself and Sylvester because of the continuances Sylvester had requested without James' knowledge.

"The State contradicted James' assertion that he had not been present or known about any of the continuances, alerting the court to James' presence at the April 22 hearing and his agreement to the continuance granted that day.

"James acknowledged that the State was correct but insisted the April 22 continuance was not the only one.

"'It's several continuance[s]. I have it in my ROA that it's been continued by the defense that I did not sign off on or anything, didn't know it. I also filed a motion for . . . dismissal of case for fast and speedy trial violation, constitutional and statutory rights.'

"The State conceded that James had filed a motion to dismiss based on a speedy trial violation. The motion had not been docketed for hearing because it was filed pro se.

"Judge Kaufman ultimately granted James' request for new counsel.

"On July 11, Judge Goering continued the trial setting again despite James' in-court refusal to agree to it. James' new counsel had yet to receive any discovery. The State asked for a continuance of the trial until September 12 because of the unavailability of one of its witnesses. Judge Goering granted the State's request over James' objection and set a 'firm' trial date of September 12.

"New counsel was appointed on three occasions in late August and early September, culminating in Steven Mank's appointment on September 1. Mank would represent James through the trial but be replaced before sentencing.

"On September 12, Judge Goering signed off on another trial continuance, continuing the case from September 12 to November 14, 2016. His order is a form document similar to those filed by Sylvester in February and March. However, unlike the earlier forms, this one required the defendant's signature approving the continuance. The form shows James signed and dated it on September 10." *James*, 309 Kan. at 1283-86.

What follows is key to the posture of the present motion and appeal. This court determined, based on the limited record it had before it, that James did not establish a speedy trial violation based on a lack of waiver of his speedy trial rights:

> "[T]he record is not silent on James' contemporaneous attitude toward the continuances obtained by Sylvester. Although generic forms were used, and there is no evidence of a waiver of James' right to be present, Sylvester represented to the court that he had consulted with his client and at least implied that James agreed with his counsel's course of action.

> "In addition, the record establishes that James later acquiesced in other continuances that postponed his trial. On April 22, 2016, James agreed to his trial being moved from June to July to accommodate the court's calendar. At the same hearing, he told the court, 'I'm not worried about the time.' In September 2016, after Mank had finally been appointed, James again agreed to a continuance from September to November. James personally signed off on the form requesting the continuance. . . . James' initial unequivocal demand for no continuances charged against him collapsed in the face of other exigencies, principally the need for adequate time to prepare for new counsel.

> "Absent any consistent assertion of a violation of his speedy trial right or another sign of prejudice arising from James' absence from continuance hearings, any assumed error would not be reversible." *James*, 309 Kan. at 1310-11.

We see from the above discussion that this court has already determined that James' speedy trial rights were not violated and that he suffered no prejudice from Sylvester's conduct. His present claims of ineffective assistance by a series of attorneys all rest on the premise of prejudice, and those claims accordingly are unsupported. We consider each of these claims.

14

A. Brad Sylvester

Brad Sylvester was James' trial counsel until the court appointed new counsel. This court has already concluded that the record sufficed to show that James' speedy trial rights were not violated. It relied both on Sylvester's representations that James agreed to continuances and on James' implicit and express statements to the district court that he was agreeing to several continuances. The doctrines of res judicata and law of the case operate against James, and he offers no new evidence or arguments to support his claim.

The law-of-the-case doctrine prevents a party from relitigating an issue already decided on appeal in successive stages of the same proceeding. *State v. Parry*, 305 Kan. 1189, Syl. ¶ 1, 390 P.3d 879 (2017). Courts adhere to the law of the case ""to avoid indefinite relitigation of the same issue, to obtain consistent results in the same litigation, to afford one opportunity for argument and decision of the matter at issue, and to assure the obedience of lower courts to the decisions of appellate courts. [Citation omitted.]""" *Parry*, 305 Kan. at 1194.

The doctrine of stare decisis "instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised." *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362-63, 361 P.3d 504 (2015).

This court has held that, in the context of a claim of denial of his constitutional right to be present, James failed to demonstrate a violation of his right to a speedy trial. To the contrary, the record tended to show *no* violation of his speedy trial rights.

There is no need to remand this case for an evidentiary hearing. The speedy trial issue has been resolved to James' disadvantage, and he may not relitigate it in a K.S.A. 60-1507 proceeding.

15

The district court relied on res judicata to deny James' speedy trial/ineffective assistance claims. This was correct. The summary denial was appropriate because the motion, files, and records of the case conclusively established James was not entitled to relief. As a consequence, the first prong of the *Strickland* and *Chamberlain* test was not met, a showing that counsel's performance was deficient.

B. Steve Mank

Steve Mank was eventually appointed as new counsel for James and represented him at trial. James argues Mank was ineffective because he did not argue to the district court that Sylvester was ineffective for waiving speedy trial rights. He acknowledges that this court ruled there was no speedy trial violation, but he contends that it is possible that making this argument prior to trial would have required an evidentiary hearing and might have produced a different result. This somewhat circuitous argument again implies this court was wrong in its previous opinion: Sylvester was ineffective for allowing continuances against James' wishes, and Mank was ineffective for failing to challenge Sylvester's assertions. But, in the end, this court has decided that the record supports a finding that there was no speedy trial violation resulting from Sylvester's conduct. 309 Kan. at 1311. Therefore, it follows that there was no viable ineffective assistance claim against either attorney.

C. Kai Tate Mann and Sam Schirer

This claim of error by appellate counsel relates to James' issues on direct appeal. Kai Tate Mann and Sam Schirer represented James in his direct appeal. James contends their representation was ineffective, specifically arguing his appellate counsel failed to provide authority that would support a new standard for analyzing harmless error.

16

The test for effectiveness of appellate counsel is the same as for trial counsel. See *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988). A defendant claiming ineffective assistance of appellate counsel must demonstrate counsel's performance, considering the totality of the circumstances, fell below an objective standard of reasonableness. And, to determine whether counsel's performance was objectively reasonable, the reviewing court judges the challenged conduct on the facts of the particular case, viewed as of the time of the counsel's conduct. *Miller v. State*, 298 Kan. 921, 931, 318 P.3d 155 (2014). This court employs "a strong presumption that counsel's conduct was reasonable." 298 Kan. at 931.

In James' direct appeal, this court held:

"We now turn to harmlessness. James argues that each of the errors identified is a constitutional flaw in his trial. See *State v. Salary*, 301 Kan. 586, 599, 343 P.3d 1165 (2015). He urges us to reconsider our caselaw applying a statutory harmlessness test to such instruction error. He argues that these errors implicate federal and state constitutional guarantees of a defendant's right to present his or her theory of defense. See *State v. Evans*, 275 Kan. 95, 102, 62 P.3d 220 (2003) (defendant entitled to present theory of his or her defense; exclusion of evidence integral to theory violates defendant's fundamental right to fair trial).

"James does not cite any caselaw or other authority establishing the rule he seeks, and he does not otherwise articulate an argument sufficient to persuade a majority of this court to reconsider application of the statutory test in these circumstances. See *State v. Torres*, 280 Kan. 309, 331, 121 P.3d 429 (2005) (simply pressing point without pertinent authority, without showing why point sound despite lack of supporting authority or in face of contrary authority akin to failing to brief issue; when party fails to brief issue, issue considered waived, abandoned). We therefore continue to apply the statutory test today.

"Under that test we 'must be persuaded that there is no reasonable probability that the error will or did affect the outcome of the trial.' *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221, 132 S. Ct. 1594, 182 L. Ed. 2d 205 (2012).

17

The burden of demonstrating harmlessness is on the party benefiting from the error, which, in this case, is the State. See *State v. Preston*, 294 Kan. 27, Syl. ¶ 3, 272 P.3d 1275 (2012).

"To reach a verdict in this case the jury had to resolve the conflict between two competing versions of the critical moments surrounding the shooting of McClennon. Either James returned to the party intending to do harm to Johnson and McClennon or he returned for other reasons and then was forced to react to a lethal threat from Johnson, McClennon, and Travis. The jury found James guilty of first-degree murder, which required jurors to conclude not only that the killing was intentional but also premeditated. See K.S.A. 2018 Supp. 21-5402(a)(1). This verdict eliminates the possibility that the jury viewed the killing as merely reckless, and we can safely say there is no reasonable probability the judge's refusal to instruct on either or both reckless second-degree murder and involuntary manslaughter affected the outcome of the trial." *James*, 309 Kan. at 1301-02.

James asserts that this court was, in essence, finding that his appellate counsel was deficient because they did not present authority supporting a novel theory relating to constitutional harmlessness analysis.

But, as the State points out in its brief, James makes no showing either that there is authority to be found supporting his novel argument or that this court would be likely to adopt such a novel argument or that, if it did adopt the argument he proposed in his direct appeal, the result would have been different. Any argument about ineffectiveness of his appellate counsel is entirely speculative.

James' claim is not supported by any showing that the theory was likely to succeed or could have been supported by plausible authority. We do not fault his appellate counsel for putting forward a novel theory, and we do not find counsel was ineffective for failing to present the novel theory in such a way that it would convince this court to adopt that theory. James fails to demonstrate performance by his appellate counsel that was

18

objectively unreasonable. We therefore do not need to consider whether their actions were prejudicially deficient. James' argument fails as to his appellate counsel also.

CONCLUSION

James presented the trial court with several diverse claims of asserting he was entitled to a new trial based on newly discovered evidence or a hearing to determine whether the attorneys who represented him at trial and on appeal were prejudicially deficient in performing their professional duties. These claims were based on matters already established either by evidence produced at trial or by determinations made on appeal.

We find no error on the part of the trial court in dismissing James' various challenges to his conviction.

Affirmed.