NOT DESIGNATED FOR PUBLICATION

No. 127,854

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DOUGLAS MOSER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harvey District Court; MARILYN M. WILDER, judge. Oral argument held September 16, 2025. Opinion filed October 31, 2025. Affirmed.

*Jean K. Gilles Phillips*, of Paul E. Wilson Project for Innocence and Post Conviction Remedies, University of Kansas School of Law, for appellant.

*Ethan C. Zipf-Sigler* and *Andrew J. Lohmann*, assistant solicitors general, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., MALONE and CLINE, JJ.

PER CURIAM: Douglas Moser appeals his conviction of unlawful possession of a controlled substance. Moser claims: (1) Law enforcement extended the scope of Moser's traffic stop in violation of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights; (2) law enforcement unconstitutionally conducted a pat-down of Moser because the alleged consent was not valid and there was no reasonable suspicion that he was armed and dangerous; (3) law enforcement unconstitutionally removed a needle from Moser's pocket by failing to meet

1

the plain view or plain feel exception to the warrant requirement; (4) Moser's arrest and seizure of evidence was unconstitutional because there was no probable cause of criminal activity particularized to Moser; and (5) trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. After thoroughly reviewing the record and for reasons explained below, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On April 22, 2021, while on duty, Harvey County Sheriff's Deputy Colt Pfautz received a call from Detective Mitchell Nedrow who had seen a vehicle with a passenger who had a warrant for their arrest. Pfautz later testified the passenger's arrest warrant was for distribution of methamphetamine. Pfautz was assigned to the Harvey County Drug Task Force and had received "countless training hours" from federal and state agencies on illegal narcotics and drug interdiction. Nedrow asked Pfautz to stop the vehicle. Upon locating the vehicle, Pfautz initiated a traffic stop because neither the driver nor the passenger was wearing a seat belt. Nedrow soon arrived on the scene.

Nedrow had the passenger, Johnnie Ellington, exit the vehicle so he could execute the arrest warrant. Meanwhile, Pfautz spoke to Moser to check his license, registration, and insurance, which were all valid. While speaking to Moser, Pfautz overheard Ellington tell Nedrow that "he had drugs on his person." Based on that admission from Ellington, Pfautz asked Moser to exit the vehicle so he could search it. Before searching the vehicle, Pfautz asked to pat Moser down for weapons, to which Moser agreed. Pfautz later testified that he regularly patted down the occupants of a vehicle before searching it because of "[o]fficer safety so they don't pull a gun while I'm not looking at them." During the pat-down, Pfautz felt "an object that [he] immediately identified or believed to be a needle." Based on the feel of the needle and his training and experience that needles

2

may be used to ingest narcotics, Pfautz removed the needle from Moser's pocket. Pfautz then searched the vehicle but found no incriminating evidence.

Pfautz proceeded to arrest Moser for possession of drug paraphernalia due to the needle found during the pat-down. Pfautz conducted a search incident to arrest of Moser's person which uncovered a fireworks box in Moser's pocket with a crystal substance that Pfautz believed to be methamphetamine.

On May 4, 2021, the State charged Moser with one count of unlawful possession of a controlled substance and one count of possession of drug paraphernalia. Before trial, Moser moved to suppress the evidence. The district court held a hearing and Pfautz was the only witness. At the close of the evidence, the State argued that Ellington's statement about having drugs on his person created probable cause to search the vehicle. The State argued that Pfautz conducted a proper weapons pat-down that produced the needle which in turn created probable cause to arrest Moser and fully search his person.

Moser argued that Ellington's statement that he had drugs on his person did not provide probable cause to search the vehicle. He also argued the officers had no reasonable suspicion to extend the traffic stop beyond a seat belt violation as to Moser and detain him after he had provided his license, registration, and insurance. Moser also argued that he did not voluntarily consent to the weapons pat-down and Pfautz could not conduct the pat-down without consent absent a belief that Moser was armed and dangerous. Finally, Moser contended that the plain feel exception did not apply to the needle because it was not readily apparent that the needle was drug paraphernalia.

The district court issued a bench ruling denying Moser's motion to suppress. The district court found that the officers had reasonable suspicion to extend the traffic stop and probable cause to search the vehicle based on Ellington's statement that he had drugs on his person. The district court found that Moser consented to the pat-down. Finally, the

3

district court found that the plain feel exception allowed Pfautz to remove the needle from Moser's pocket and lawfully arrest him for possession of drug paraphernalia.

The case proceeded to a jury trial held on March 23, 2023. Pfautz and Nedrow testified along with a forensic scientist from the Kansas Bureau of Investigation who tested the crystal substance found on Moser and identified it as methamphetamine. The needle that Pfautz seized from Moser was not preserved for evidence. Moser did not testify at trial and presented no defense. Defense counsel argued to the jury that the State had failed to prove the charges beyond a reasonable doubt. The jury found Moser guilty of possession of methamphetamine but not guilty of possession of drug paraphernalia.

On May 12, 2023, Moser moved for a new trial alleging ineffective assistance of counsel. Moser claimed his trial counsel was ineffective at the suppression hearing by failing to introduce Moser's mother's medical records into evidence to show she was diabetic and that the needle Pfautz recovered was for her treatment. He also claimed that his counsel failed to present a video at the suppression hearing showing him in handcuffs before the weapons pat-down and that his counsel failed to undercut witness credibility at both the suppression hearing and the trial. Moser later filed a handwritten addendum to the motion including many other complaints against his counsel.

The district court held a sentencing hearing on January 8, 2024. Moser was represented by new counsel. Because the motion for new trial was untimely filed, the district court took up sentencing first and treated the motion under K.S.A. 60-1507 to be addressed after sentencing. The district court sentenced Moser to 20 months' imprisonment but granted probation for 18 months conditioned on drug treatment.

The district court then heard evidence on Moser's motion alleging ineffective assistance of counsel. Moser called Carol Longenecker Schmidt, Moser's trial counsel. Schmidt testified that in her view introducing Moser's mother's medical records at the

4

suppression hearing to contest the purpose of the needle Moser possessed would have been irrelevant where Moser's mother was not present during the traffic stop and where it would not change that a reasonable officer would perceive the needle as drug paraphernalia when conducting the weapons pat-down. Although she discussed the issue with Moser before the suppression hearing, she made a strategic decision not to introduce those medical records. As for the alleged video of Moser handcuffed before the pat-down, Schmidt testified that she did not recall any video evidence showing Moser handcuffed before the pat-down. Schmidt conceded that one video showed Moser handcuffed but stated it was taken after Moser had been arrested.

Schmidt next testified about undermining the credibility of witnesses during the suppression hearing and trial. Moser wanted Schmidt to challenge the officers' credibility based on what he deemed were inconsistent reasons for the traffic stop. Schmidt reiterated that she considered the issue and made a strategic decision not to challenge the difference between Pfautz's and Nedrow's reasons for conducting the stop. Schmidt testified that Moser wanted her to attack the officers' credibility to a greater extent but she lacked evidence to do so. Moser then walked Schmidt through the handwritten addendum to Moser's motion. We will not address each of Moser's handwritten complaints about his trial counsel except to say that Schmidt addressed each complaint and explained that her decisions were based on reasonable trial strategy. Moser declined to testify at the hearing. After hearing the evidence, the district court took the matter under advisement.

On January 11, 2024, the district court ruled from the bench. The district court created a robust record and walked through each of Moser's allegations against Schmidt, finding that each failed to establish ineffective assistance of counsel. The district court also found that Moser failed to show prejudice. The district court concluded by denying Moser's motion. Moser timely appealed his conviction.

5

ANALYSIS

On appeal, Moser claims his conviction should be reversed because (1) law enforcement extended the scope of his traffic stop in violation of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights; (2) law enforcement unconstitutionally conducted a pat-down of Moser because his alleged consent was not valid and there was no reasonable suspicion that he was armed and dangerous; (3) law enforcement unconstitutionally removed a needle from Moser's pocket by failing to meet the plain feel exception to the warrant requirement; (4) Moser's arrest and seizure of evidence was unconstitutional because there was no probable cause of criminal activity particularized to Moser; and (5) trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights.

Moser's first four claims go to whether the district court erred in denying his motion to suppress evidence. On a motion to suppress, an appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo. *State v. Garrett*, 319 Kan. 465, 469, 555 P.3d 1116 (2024). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021). "When reviewing a district court's ruling denying a pretrial motion to suppress, an appellate court may consider both the evidence presented at the suppression hearing and the evidence adduced at trial." *State v. Martin*, 318 Kan. 538, Syl. ¶ 12, 544 P.3d 820 (2024). When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Mendez*, 319 Kan. 718, 735-36, 559 P.3d 792 (2024). The State carries the burden to prove that the search and seizure were lawful. *State v. Goodro*, 315 Kan. 235, 238, 506 P.3d 918 (2022).

6

*Reasonable suspicion to extend the traffic stop and probable cause to search the vehicle*

Moser first claims the district court erred in denying his motion to suppress because law enforcement extended the scope of his traffic stop in violation of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights. Moser argues that Ellington's statement that he had drugs on his person cannot extend the scope of the stop because it does not constitute either probable cause or reasonable suspicion that Moser was committing a crime. Moser argues that because his Fourth Amendment rights were violated, all evidence must be suppressed. The State argues that the officers did not impermissibly extend the scope of the stop.

The Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights prohibit unreasonable searches and seizures. These rights are fundamental and must be safeguarded by the courts. The Kansas Supreme Court has long held that the search and seizure provisions of the Kansas and United States Constitutions are similar and provide the same rights and protections. See, e.g., *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014).

A traffic stop is a seizure triggering Fourth Amendment protections. *State v. Thompson*, 284 Kan. 763, Syl. ¶ 6, 166 P.3d 1015 (2007). Routine traffic stops are limited in scope to requesting a driver's license, proof of insurance, and vehicle registration, running a computer check, and issuing a citation. *State v. Coleman*, 292 Kan. 813, 816, 257 P.3d 320 (2011). "An officer may extend a traffic stop beyond the duration necessary to fulfill the purpose of the stop when a detainee's responses and the surrounding circumstances give rise to an objectively reasonable and articulable suspicion that criminal activity is occurring." *State v. Cash*, 313 Kan. 121, Syl. ¶ 4, 483 P.3d 1047 (2021). Moreover, even without reasonable suspicion of criminal activity, a police officer may ask the driver to exit the vehicle when the vehicle has been stopped for

a traffic violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); *State v. Spagnola*, 295 Kan. 1098, 1105, 289 P.3d 68 (2012).

Probable cause to search a vehicle can be established if the totality of the circumstances indicates there is a "'fair probability'" that the vehicle contains contraband or evidence of a crime. *State v. Jefferson*, 297 Kan. 1151, 1159, 310 P.3d 331 (2013). Under the automobile exception, officers may search a vehicle where there is probable cause that the vehicle contains contraband or other evidence, and where the officers reasonably believe there is a threat of imminent loss of evidence. *State v. Howard*, 305 Kan. 984, 990, 389 P.3d 1280 (2017). A vehicle travelling on the road satisfies proof of an exigency allowing for the warrantless search of the vehicle if justified with probable cause. *State v. Crudo*, 318 Kan. 32, 35, 541 P.3d 67 (2024).

We begin our analysis by examining the purpose of the stop, because the purpose of the stop controls whether the officers exceeded the scope. Moser insists that the only purpose of the stop was a seat belt violation. But Pfautz testified that the initial reason for the stop was because Nedrow relayed to him that the passenger, Ellington, had an open warrant for his arrest. Nedrow was executing the arrest warrant on Ellington while Pfautz was addressing Moser's seat belt violation. Although it appears there were two lawful reasons for the traffic stop, we will accept Moser's argument that the sole purpose of the stop as to Moser was the seat belt violation.

While Pfautz was speaking to Moser and checking his license, registration, and insurance, Pfautz overheard Ellington tell Nedrow that "he had drugs on his person." This information led Pfautz to ask Moser to exit the vehicle so he could search it. While the ultimate issue Moser raises is whether the officers had reasonable suspicion to extend the scope of the traffic stop, the parties merge that issue with the question of whether probable cause supported the vehicle search. This reasoning has some logic behind it where Pfautz testified the only reason he extended the traffic stop as to Moser was for the

purpose of searching the vehicle. Thus, the two questions are intertwined. Moreover, the contraband Moser was charged with possessing was found on his person, not in the vehicle, and the State alleges that Moser was only patted down for officer safety so Pfautz could search the vehicle. So Moser's Fourth Amendment rights were violated here unless the evidence shows there was probable cause to search the vehicle.

Moser argues there was no probable cause to search his vehicle and the State disagrees. The parties rely heavily on competing cases from our court to support their respective positions. The State points to *State v. Knight*, 55 Kan. App. 2d 642, 648-49, 419 P.3d 637 (2018). Moser cites *State v. Burnett*, No. 120,205, 2020 WL 2503477 (Kan. App. 2020) (unpublished opinion). We will discuss both cases in detail.

In *Knight*, a sheriff's deputy, while on road patrol, stopped Knight's vehicle because of a suspected expired tag and registration. Knight was travelling with a passenger. While conducting the stop and speaking with Knight, the deputy saw a glass bowl and cylinder commonly used to smoke methamphetamine sticking out of the passenger's waistband. The deputy instructed both occupants to exit the vehicle so she could search it. The search uncovered additional paraphernalia items, marijuana, and methamphetamine. The State charged Knight with possessing those items. He moved to suppress the evidence, which the district court granted.

On appeal, the issue was whether the deputy's observation of drug paraphernalia in the passenger's waistband provided probable cause to search Knight's vehicle. This court found that the deputy's observation of drug paraphernalia in the passenger's waistband provided probable cause for the deputy to search all areas of the vehicle within the passenger's reach. 55 Kan. App. 2d at 648-49. Those areas included compartments where the incriminating items were recovered. Thus, this court concluded the district court erred in granting Knight's motion to suppress the evidence. 55 Kan. App. 2d at 649.

9

In *Burnett*, while monitoring locations of suspected drug activity, Detective Graber saw Burnett park his truck outside a suspected drug house, go inside with a satchel, and leave a few minutes later with the same satchel. Another man, Bobby Fisher, entered Burnett's truck as a passenger, and they drove off together. Graber asked another officer to conduct a traffic stop because he believed Burnett was driving with a suspended license. When the other officer conducted the stop, Fisher ran from out of the passenger side into a nearby building. Graber pursued Fisher and found him hiding under a desk. Next to the desk Graber found a trash can containing a hat believed to belong to Fisher along with a needle with residue on it. A bag found in Fisher's pocket had similar residue that Graber believed to be methamphetamine.

Graber returned with Fisher to Burnett's truck and searched the truck based on the evidence that Fisher ran from the truck, had methamphetamine on his person, and tried to hide the methamphetamine. Graber also recalled that Burnett had told him in previous conversations that he was a user. Graber also knew that drug purchases had previously occurred at the residence he saw Burnett stop at and enter, and he knew Burnett had made a brief stop at a different residence that he was also monitoring for drug activity. The vehicle searched turned up several incriminating items leading to numerous charges against Burnett. Burnett moved to suppress the evidence from the vehicle search, which the district court granted on the ground that no evidence linked Burnett to the methamphetamine found on Fisher. 2020 WL 2503477, at *2.

The State appealed arguing that Graber had probable cause to search the vehicle after finding methamphetamine on Fisher, who was a passenger in the vehicle and because Graber was aware that Burnett had stopped at locations known for drug activity. The State cited *Knight* to support its position that an officer finding drugs on a passenger provided probable cause to search areas in the vehicle within the passenger's reach. But this court disagreed and instead distinguished the facts in *Knight* to find it inapplicable. This court reasoned that in *Knight*, the deputy saw drug paraphernalia in plain view on

the passenger's person while the passenger was still in the vehicle. And because the paraphernalia was in plain view, this court reasoned that Knight would have also had a clear view that his passenger possessed the paraphernalia in his vehicle. But this court found it important that "there was no showing that Burnett had a view or knowledge of Fisher's drug paraphernalia at the time Fisher was a passenger in the truck." 2020 WL 2503477, at *5. For that reason, this court affirmed the district court's decision to grant the motion to suppress. 2020 WL 2503477, at *6-7.

Moser claims the decision in *Burnett* cleanly applies where no evidence linked Moser to the drugs Ellington claimed to have on his person outside the vehicle. Thus, Moser claims Pfautz lacked probable cause to search the vehicle. And for similar reasons Moser claims Pfautz erroneously extended the stop beyond a seat belt violation for him because Pfautz lacked reasonable suspicion that Moser possessed drugs or drug paraphernalia and lacked probable cause to search the vehicle.

We find that neither *Knight* nor *Burnett* controls the outcome of Moser's case because the facts here differ from both cases. But we also find this court's reasoning in *Burnett* to be flawed in several respects. First, the *Burnett* court's basis for distinguishing *Knight* does not seem meaningful. In *Knight*, the deputy saw drug paraphernalia on the passenger while the passenger was still in the vehicle whereas in *Burnett*, the detective found drugs on the passenger immediately after he ran from the truck and tried to hide. But in both cases, drugs or drug paraphernalia were connected to the vehicle which caused law enforcement to want to search it.

Second, and more importantly, the *Burnett* court seemed focused on whether any drug evidence found on the passenger was linked to the driver, Burnett. This was not the correct issue before the court. It does not matter whether the drug evidence found on the passenger was connected to the driver in terms of analyzing whether there was probable cause to search the vehicle. Probable cause to search a vehicle is established if the totality

11

of the evidence indicates there is a fair probability that *the vehicle* contains contraband or evidence of a crime. The fact that a vehicle passenger possesses drugs establishes a fair probability that contraband or evidence of a crime may be found in the area within the passenger's reach, even if that contraband or evidence cannot be linked to the driver.

Third, in finding law enforcement lacked probable cause to search Burnett's truck based on drug evidence found on the passenger, the *Burnett* court failed to consider or even discuss the evidence that Burnett's truck had just stopped at a suspected drug house, along with Burnett's suspicious activity of entering and quickly exiting the house with a satchel. The *Burnett* court did not consider the totality of the circumstances presented by the evidence in deciding whether there was probable cause to search the truck.

Returning to our facts, Pfautz testified that, while speaking with Moser about the seat belt violation, Pfautz heard the passenger, Ellington, tell Nedrow that he had drugs on his person. Ellington had just exited the vehicle and was standing behind it. Pfautz knew that Ellington had a warrant for distribution of methamphetamine, and Nedrow was executing that warrant. Pfautz decided to search the vehicle. When asked directly at trial to state his probable cause for the search, Pfautz answered, "The passenger in the vehicle had a warrant for distribution of methamphetamine. When my partner arrived he had the passenger exit, and the passenger told us he had methamphetamine on him." See *Martin*, 318 Kan. 538, Syl. ¶ 12 (holding that appellate courts may consider evidence adduced at trial when reviewing the district court's ruling on a pretrial motion to suppress).

Although it may be a closer call than some other cases present, the totality of the circumstances here indicates a fair probability that the vehicle might contain contraband or evidence of a crime to allow Pfautz to search the area of the vehicle that was within Ellington's reach immediately before he exited the vehicle. It does not matter whether the evidence could be tied to Moser, it was his vehicle that Pfautz wanted to search. We conclude under these facts that the officers had reasonable suspicion to extend the scope

of the traffic stop and probable cause to search the vehicle. Substantial competent evidence supports the district court's factual findings and its legal conclusion was sound. The district court did not err in denying the motion to suppress on these grounds.

*The weapons pat-down before the vehicle search*

Moser next claims the district court erred in denying his motion to suppress because Pfautz unconstitutionally conducted a pat-down when the alleged consent was not valid and there was no reasonable suspicion that Moser was armed and dangerous. Moser makes three arguments. First, by unconstitutionally extending the scope of the stop, any perceived consent to pat-down Moser was tainted and all evidence must be suppressed. Second, the consent, in-and-of itself is not valid because it was not clear, unequivocal, and freely given without coercion. Third, Pfautz admitted that he had no reason to suspect Moser was armed and dangerous to justify a pat-down without consent. The State responds that Moser properly consented to a pat-down search of his person and also that Pfautz had reason to believe officer safety justified a pat-down for weapons.

"In order to justify a pat-down search of a driver or a passenger during a traffic stop, the police officer must harbor reasonable suspicion that the person subjected to the search is armed and dangerous." *State v. Spagnola*, 295 Kan. at 1106; see also *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The *Terry* requirements for an officer-safety pat-down are codified in Kansas at K.S.A. 22-2402(2), which states: "When a law enforcement officer has stopped a person for questioning . . . and reasonably suspects that the officer's personal safety requires it,

13

such officer may frisk such person for firearms or other dangerous weapons." A pat-down maneuver only allows an officer to pat-down a person's outer clothing without placing the officer's hands inside any pockets or under the outer surface of any garment, unless a weapon is found. *Spagnola*, 295 Kan. at 1106. "Consent is not a necessary prerequisite to an officer-safety pat-down for weapons. As long as the officer reasonably suspects that his or her personal safety requires it, the officer may conduct a pat-down without the consent of the suspect." *State v. White*, 44 Kan. App. 2d 960, 971, 241 P.3d 591 (2010).

Moser first argues that by unconstitutionally extending the scope of the stop, any perceived consent to pat-down Moser was tainted and all evidence must be suppressed. We have already determined in the last section of this opinion that the officers did not unconstitutionally extend the scope of the stop, so Moser's consent to the pat-down was not tainted and we need not suppress the evidence for this reason.

Second, Moser argues his consent was not valid because: (1) There is no clear and positive testimony of unequivocal, specific, and freely given consent and (2) any alleged consent was the product of coercion. Moser asserts there is no evidence, substantial or otherwise, to support the district court's finding that Moser said "yes" to the request for a pat-down. Moser points out that at the suppression hearing, Pfautz testified, "I asked him if I could pat search him for any weapons and he allowed me to do so." We agree with Moser that this testimony establishes mere acquiescence to the pat-down.

The State responds by pointing out that Pfautz testified at trial that, "I asked him at the time if I could pat search him for those items and he agreed to let me." While Moser still argues this statement does not establish positive testimony of consent, we disagree. Pfautz' testimony that Moser "allowed" the pat-down signals acquiescence, but his testimony that Moser "agreed" to the pat-down is equivalent to Moser saying "yes." And again, an appellate court may consider evidence adduced at trial when reviewing the district court's ruling on a pretrial motion to suppress. *Martin*, 318 Kan. 538, Syl. ¶ 12.

14

Moser next argues that any alleged consent was the product of coercion. He asserts that a reasonable person in Moser's position would not have felt free to decline Pfautz' request. But as the State points out, there is little evidence of coercion in the record. Pfautz was the only law enforcement officer who had direct contact with Moser. He testified that the encounter was casual, and he described Moser as calm and cooperative. There was no evidence that Pfautz brandished any weapon or exerted any force on Moser beyond having him step out of the car so he could search it. Moser never testified to controvert this evidence. There was substantial competent evidence to support the district court's finding that Moser properly consented to the pat-down.

Although we could end our analysis here, we will address Moser's third argument that, absent valid consent, the pat-down was unconstitutional because Pfautz had no reasonable suspicion that Moser was armed and dangerous. K.S.A. 22-2402(2) allows an officer to frisk a person when the officer "reasonably suspects that such officer's personal safety requires it." But Moser insists this statute is construed to mean that the officer must reasonably suspect the person is armed and dangerous, citing the language in *Spagnola* and *Johnson*. Moser then points out that in response to one question at the suppression hearing, Pfautz agreed that he had no reason to believe Moser possessed a weapon. Based on this testimony, Moser argues the pat-down was unconstitutional.

But even if Moser is correct that an officer must reasonably suspect that a person is "armed and dangerous" to justify a pat-down, we have substantial competent evidence in the record to support that finding. Pfautz also testified at the suppression hearing that he regularly patted down the occupants of a vehicle before searching it because of "[o]fficer safety so they don't pull a gun while I'm not looking at them." So although Pfautz' testimony may have been inconsistent, he articulated that he patted down Moser before searching the vehicle to make sure Moser could not pull out a gun while Pfautz was not looking. And this concern is eminently reasonable. Law enforcement officers have dangerous jobs, and traffic stops are especially perilous. Pfautz' pat-down of Moser

15

for weapons before he searched the vehicle was within constitutional limits. The district court did not err in denying the motion to suppress for this reason.

*Probable cause to remove the needle under the plain feel exception*

Moser next claims the district court erred in denying his motion to suppress because Pfautz unconstitutionally removed a needle from Moser's pocket during the pat-down by failing to meet the plain feel exception to the warrant requirement. Thus, Moser asserts the needle, which was the basis for the arrest, must be excluded as evidence. The State asserts that Pfautz legally removed the needle from Moser's pocket under the plain feel exception to the warrant requirement. Alternatively, the State argues that K.S.A. 22-2402(2) allows officers to take items from suspects when their safety requires it.

The plain feel exception, much like the plain view exception, allows officers to seize evidence inadvertently discovered in the course of a lawful search. "The requirements for the plain feel exception are: '"1) [T]he initial intrusion which afforded authorities the plain view is lawful; 2) the discovery of the evidence is inadvertent; and 3) the incriminating character of the article is immediately apparent to searching authorities."'" *State v. Lee*, 283 Kan. 771, 779, 156 P.3d 1284 (2007). "'Immediately apparent to searching authorities' has been interpreted to mean that the officer must have probable cause to believe that the object is evidence of a crime." 283 Kan. at 779.

Moser contests the first element only insofar as has already been discussed above. We find the initial intrusion—the pat-down—was lawful. Moser does not contest the second element. Moser bases his claim on the third element. He argues that it was not immediately apparent to Pfautz that the needle was of incriminating character because a needle by itself can have benign uses. But Moser applies this element too strictly. Probable cause does not require that Pfautz knew beyond all doubt in the moment he felt the needle that Moser used it to ingest a controlled substance. Probable cause is a lesser

16

standard that does not require the foreclosure of all possible innocent explanations. See *State v. Phillips*, 312 Kan. 643, 664, 479 P.3d 176 (2021).

Pfautz testified that he felt what he immediately recognized as a needle that he knew from his training and experience could be used to ingest narcotics. After all, Pfautz was assigned at the time to the Harvey County Drug Task Force and had received countless training hours from federal and state agencies on illegal narcotics and drug interdiction. He testified at trial that when someone possesses a needle for lawful medical purposes, it is usually kept in a case along with a package of insulin. Pfautz was suspicious of Moser's needle because it was not in a case with insulin. Pfautz also knew that Ellington was involved with illegal narcotics, and Pfautz was just about to search Moser's vehicle for contraband or evidence of a crime. That testimony suffices to show Pfautz had probable cause to believe Moser possessed an item of drug paraphernalia and therefore could remove the item under the plain feel exception. Despite Moser's claim that the needle might have an innocent purpose, Pfautz was not required to foreclose all possible innocent explanations for the needle the moment he felt it.

The district court considered in its analysis that Pfautz had asked Moser about the needle and Moser did not answer, which the district court found as supporting the State's position. Moser claims on appeal that consideration violated his right to silence because the district court used his silence as evidence against him. But even if correct, the district court was right for the wrong reason where Pfautz's testimony above shows he did not rely on Moser's silence to satisfy the plain feel exception. Rather, Pfautz felt what he immediately knew to be a needle based on his experience conducting prior pat-downs, he then asked Moser an unspecified question about the needle that Moser did not answer, and then "based on [Pfautz's] belief of it being a needle [he] removed it." Erasing that unspecified question and Moser's silence from the equation still produces probable cause.

17

Finally, Moser argues on appeal that if discovery of the needle was sufficient to serve as probable cause for his arrest, the needle should have been preserved as evidence. Nedrow testified that the needle was disposed of as a common practice for safety and biohazardous reasons. But as Moser points out, the Kansas Bureau of Investigation Forensic Laboratory is quite capable of handling biohazardous evidence. We agree with Moser that it was nonsensical for law enforcement to discard the needle when its discovery provided probable cause for Moser's arrest and subsequent charge of possession of drug paraphernalia. But we disagree with Moser's assertion that "failure to preserve the needle makes it impossible for a reviewing court to determine if there was probable cause." The fact that law enforcement discarded the needle does not change our analysis on the application of the plain feel exception to the warrant requirement. The State has established that the plain feel exception applied to the seizure of the needle. We need not address the State's alternate claim that K.S.A. 22-2402(2) allows officers to take items from suspects when their safety requires it.

*Probable cause to support Moser's arrest*

Moser next claims the district court erred in denying his motion to suppress because his arrest was not supported by probable cause of criminal activity particularized to Moser. But all his arguments on why his arrest was unconstitutional have already been addressed and rejected in this opinion. We have already found under the facts of this case that the officers had reasonable suspicion to extend the scope of the traffic stop and probable cause to search Moser's vehicle. Pfautz' pat-down of Moser for weapons before he searched the vehicle was consensual and within constitutional limits. The State has established that the plain feel exception applied to the seizure of the needle.

When considering whether an officer had probable cause to initiate an arrest, the court examines all the information the officer possessed and the fair inferences the officer could make from the information, even if that information may not be admissible on the

18

final issue of guilt. *State v. Goodro*, 315 Kan. at 240. The consideration of the evidence available to the officer is "weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Illinois v. Gates*, 462 U.S. 213, 231-32, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

The discovery of the needle, which Pfautz knew from his training and experience could be used to ingest narcotics, provided probable cause for Pfautz to lawfully arrest Moser for possession of drug paraphernalia. During a lawful arrest, officers are permitted to search the arrestee's person and the area around them. *Martin*, 318 Kan. at 560. The methamphetamine Pfautz discovered and seized from Moser in the search incident to the lawful arrest was admissible evidence. The district court did not err in denying the motion to suppress on any of the grounds asserted by Moser.

*Ineffective assistance of counsel*

Moser's final claim on appeal is that his trial counsel provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. Moser brought this claim in district court through an untimely motion for new trial. The district court treated the motion under K.S.A. 60-1507. After an evidentiary hearing on a K.S.A. 60-1507 motion, an appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Appellate review of the district court's ultimate conclusions of law is de novo. *State v. Peters*, 319 Kan. 492, 499, 555 P.3d 1134 (2024).

In reviewing a district court's decision on claims of ineffective assistance of counsel, courts consider the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468

(1985). Under the first prong, a defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's errors, the result would have been different. *State v. James*, 319 Kan. 178, 184, 553 P.3d 308 (2024).

To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action must be considered sound trial strategy. 319 Kan. at 184. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 319 Kan. at 184-85.

The district court held an evidentiary hearing on Moser's claims, and Schmidt, Moser's trial counsel, testified. Schmidt addressed each of Moser's complaints and explained that her decisions were based on reasonable trial strategy. Moser did not testify to rebut Schmidt's testimony. After hearing the evidence, the district court ruled from the bench. The district court thoroughly addressed each of Moser's allegations against Schmidt, finding that each failed to establish ineffective assistance of counsel. The district court also found that Moser failed to show prejudice.

On appeal, Moser argues that "[t]he trial court gave undue deference to counsel's testimony." Moser presents brief and conclusory arguments and does little to show why this court should disagree with the district court's findings. The district court's factual findings that Schmidt provided effective representation were supported by substantial competent evidence through Schmidt's testimony, which the district court found credible.

20

Moser is simply asking our court to reweigh the evidence, which we cannot do. See *State v. Mendez*, 319 Kan. 718, 723, 559 P.3d 792 (2024).

And even if Moser had shown defective assistance, he does not sufficiently explain how the result at trial would have been different. Indeed, he does not even assert, for example, that additional investigation would have turned up exculpatory evidence. Instead, he more candidly admits on appeal that further investigation "may have shed light on the motives of the officers" or that he may have uncovered evidence allowing him to better dispute that he consented to the pat-down. These speculative and uncertain conclusions do little to show a reasonable probability that but for his counsel's defective performance the result of the trial would have been different.

Affirmed.